VON GRAFFENREID, Von Burg, Kaufmann, Winzeler Asset Management, Ltd., Zurich, AG Plaintiff,

v.

Kevin CRAIG, as Chief Executive Officer, Chairman of the Board and Indemnitor Defendant.

No. 3–02–CV–1393–BD.

United States District Court, N.D. Texas, Dallas Division.

Feb. 14, 2003.

Robert Lee Wright, Frederick W. Reynolds, Gardere Wynne Sewell, Dallas, TX, for Plaintiff.

Philip R. Rudd, Kutak Rock, Scottsdale, AZ, for Defendants.

### MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendant Kevin Craig has filed a motion to dismiss for improper venue or, in the alternative, to transfer venue to the United States District Court for the District of Arizona. For the reasons stated herein, the motion to dismiss is denied but the motion to transfer is granted.

### I.

This case arises out of a $10 million loan made to Aperian, Inc. ("Aperian"), a Delaware corporation headquartered in Phoenix, Arizona, by Pictet & Cie, a Swiss bank, and guaranteed by Plaintiff von Graffenreid, von Burg, Kaufmann, Winzeler Asset Management, Ltd., AG ("von Graffenreid"), a Swiss corporation, as agent for Karl Nicklaus, a citizen of Switzerland. The Guaranty Agreement contains certain representations made by Defendant Kevin Craig ("Craig"), an Arizona resident, both in his individual capacity and as Chairman and CEO of Aperian. More particularly, Craig represented that:

7.1.8. Each of Kevin Craig, in his individual capacity, and [Aperian], hereby severally represent, warrant and covenant to [von Graffenreid and Nicklaus] that: (i) [Aperian] and each Subsidiary has good and insurable, title to or valid and subsisting leasehold estate in, as applicable, all of its respective real Property, and good title to all of the Collateral and all of its other Property, in each case, free and clear of all Liens except for Permitted Liens and for Liens being contested in the manner provided for in Section 7.1.15; (ii) [Aperian] and each Subsidiary has paid or discharged all lawful claims that, if unpaid, might become a Lien against any of [Aperian's] or [Aperian's] Subsidiaries' Properties that is not a Permitted Lien, unless any such claim is being contested in the manner provided for in Section 7.1.15; and (iii) the Liens granted to [von Graffenreid] for the ratable benefit of [Nicklaus] under Section 5 hereof are first

priority Liens, subject only to Permitted Liens.

\* \* \* \* \* \*

7.1.22. . . . Each of Kevin Craig, in his individual capacity, and [Aperian], hereby severally represent, warrant and covenant to [von Graffenreid and Nicklaus] that [Aperian] is not in default, and no event has occurred and no condition exists which constitutes, or which with the passage of time or the giving of notice or both would constitute, a default under any equipment lease, instrument or any other agreement between [Aperian] and [Hewlett–Packard] or to which [Aperian] and [Hewlett–Packard] are parties.

7.1.23. Each of Kevin Craig, in his individual capacity, and [Aperian], hereby severally represent, warrant and covenant to [von Graffenreid and Nicklaus] that: (i) Exhibit K is a complete listing of all capitalized leases of [Aperian] and its Subsidiaries; (ii) Exhibit L sets forth a complete listing of all operating leases of [Aperian] and its Subsidiaries; and (iii) that [Aperian] and its Subsidiaries are in full compliance with all of the terms of each of their respective capitalized and operating leases . . .

(Def. Mot., Craig Aff., Exh. B at 14 & 17, §§ 7.1.8, 7.1.22 & 7.1.23) (emphases omitted). The Guaranty Agreement also contains an addendum whereby Craig agreed to indemnify von Graffenreid and Nicklaus against all claims, demands, lawsuits, proceedings, losses, and damages resulting from:

(a) the untruth, breach, or failure of any representation or warranty, whether oral or written, made by Craig to [von Graffenreid] or any Guarantor regarding any lien of record (including, without limitation, any liens filed of record in Delaware) against [Aperian] or any Sub-

sidiary of [Aperian], or the status thereof;

(b) the untruth, breach, or failure of any representation, warranty or covenant made by Craig in his individual capacity that is set forth in the Agreement;

(c) the Permitted Liens, as defined in the Agreement from time to time; and

(d) any lien against [Aperian] or any Subsidiary of [Aperian] in favor of Hewlett–Packard Credit Corporation or Hewlett–Packard Company.

(*Id.*, Craig Aff., Exh. B at 41). Craig signed the Guaranty Agreement in his individual capacity and as Chairman and CEO of Aperian. (*Id.*, Craig Aff., Exh. B at 43 & 45). However, his personal liability is expressly limited to "Sections 7.1.8, 7.1.22 and 7.1.23 of the Agreement, and the Indemnification Addendum . . ." (*Id.*, Craig Aff., Exh. B at 45) (emphasis omitted).

Aperian, which later changed its name to Fourthstage Technologies, Inc. ("Fourthstage"), used the loan proceeds to pay off more than $30 million in existing debt in an attempt to keep its business afloat. Despite its best efforts to reduce operating expenses, Fourthstage continued to experience financial difficulties and failed to repay the $10 million loan. This required von Graffenreid and Nicklaus to perform under their guaranty with the bank. On December 31, 2001, Fourthstage filed a Chapter 11 bankruptcy proceeding in the District of Arizona. Shortly before this bankruptcy filing, von Graffenreid and Nicklaus released Craig from liability under the Indemnification Addendum in consideration for the issuance of certain warrants by Fourthstage.

On July 1, 2002, von Graffenreid sued Craig in Dallas federal court for breach of contract, negligent misrepresentation, and

recission of the release.[1] Craig has filed a motion to dismiss for improper venue or, in the alternative, to transfer venue to the District of Arizona. In response to the motion, von Graffenreid points to a forum selection clause in the Guaranty Agreement, which provides, in relevant part:

As part of the consideration, and regardless of any present or future domicile or principal place of business of Borrower or any Loan Party, Agent or any Guarantor, Borrower and each other Loan Party hereby consents and agrees that the district court of Dallas County, Texas, or, at Agent's option, the United States District Court for the Northern District of Texas, Dallas Division, shall have jurisdiction to hear and determine any claims or disputes between Borrower and/or any other Loan Party and Agent and/or Guarantors pertaining to this Agreement or to any matter arising out of or related to this Agreement. Borrower and each of the other Loan Parties expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and Borrower and each other Loan Party hereby waives any objection which Borrower and such Loan Party may have based upon lack of personal jurisdiction, improper venue or forum *non conveniens* [sic] and hereby consents to the granting of such legal or equitable relief as is deemed appropriate by such court.

(*Id.*, Craig Aff., Exh. B at 38, § 12.14) (capitalization omitted). The term "Loan Parties" is defined as "collectively, Borrower and each other Person (other than Lender, Agent and each Guarantor) which is at any time a party to any Guaranty Documents ..." (*Id.*, Craig Aff., Exh. B, App. A at 9). The "Guaranty Documents" include "the Agreement, the Other Agreements and the Security Documents." (*Id.*). Because Craig is a "Loan Party" who agreed to be bound by the Indemnification Addendum, which unquestionably is a "Guaranty Document," von Graffenreid argues that he has consented to jurisdiction and venue in this district. The motion has been fully briefed and argued by the parties and is ripe for determination.[2]

## II.

■ A civil action where jurisdiction is founded only on diversity of citizenship must be brought in the judicial district where: (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a). A plaintiff has the initial burden of proving that his chosen venue is proper. *See Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F.Supp. 455, 458 (S.D.Tex.1996).

---

1. Federal jurisdiction is proper because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See 28 U.S.C.* § 1332(a)(1).

2. Von Graffenreid objects to certain statements contained in Craig's affidavit as hearsay, irrelevant, and inadmissible parole evidence and has filed a motion to strike new evidence submitted by Craig in support of his reply. (Plf. Resp. at 2–3; Plf. Mot. to Strike

at 3–4). The court has determined that parole evidence is admissible to explain whether Craig agreed to be bound by the forum selection clause in his individual capacity and allowed both sides to present live testimony and additional evidence on this and other issues at an evidentiary hearing. Because Craig testified at this hearing, the court has not considered his affidavit for any purpose. Therefore, von Graffenreid's objections are overruled and its motion to strike is denied as moot.

In its complaint, von Graffenreid states that venue is proper in the Northern District of Texas because "a substantial part of the events giving rise to the claims arose in Dallas, Texas." (Plf. Orig. Compl. at 2). However, no facts are alleged in support of that assertion. Nor has von Graffenreid presented any evidence of events or omissions that occurred in this district. Instead, it now claims that venue is proper in Dallas under the forum selection clause of the Guaranty Agreement. (*See* Plf. Resp. at 6).[3]

### A.

The threshold issue before the court is whether Craig agreed to be bound by the forum selection clause in his individual capacity. Craig argues that "[w]hen he signed the agreement as an individual, he specifically and unambiguously '[a]ffirmed and [a]greed' *only* 'with respect to *Sections 7.1.8, 7.1.22 and 7.1.23* of the [Guaranty] Agreement [ ] and the Indemnification Addendum . . . ,' " thereby intending to exclude all other provisions of the Guaranty Agreement. (Def. Reply at 4) (emphasis in original). Von Graffenreid counters that the Indemnification Addendum is part of the Guaranty Agreement and subject to its general provisions, including the forum selection clause. (Plf. Resp. at 9, ¶ 3).

### 1.

■■■ The Guaranty Agreement provides, and neither party contests, that it is to be construed according to Texas law. (Def. Mot., Craig Aff., Exh. B at 38, § 12.14). *See also Harris v. Parker College of Chiropractic*, 286 F.3d 790, 793 (5th Cir.2002) (federal courts sitting in diversi-

ty apply state law rules of contract construction). Under Texas law, the court must ascertain and give effect to the parties' intentions as expressed in the contract documents. *Id., citing Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 861 (Tex.2000). All provisions of the contract must be construed together so that none will be rendered meaningless. *National Center for Policy Analysis v. Fiscal Associates, Inc.*, 2002 WL 433038 at *3 (N.D.Tex. Mar.15, 2002), *citing Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Where contract language cannot be given a definite legal meaning and is reasonably susceptible to more than one interpretation, it is ambiguous. *Id.* at *4, *citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). In that event, parole evidence is admissible to explain the ambiguity and the true intent of the parties. *Id.*

### 2.

It is not entirely clear from the language of the Guaranty Agreement whether Craig individually agreed to be bound by the forum selection clause. When Craig executed the contract documents in his individual capacity, he expressly agreed to sections 7.1.8, 7.1.22 and 7.1.23 of the Guaranty Agreement and to the Indemnification Addendum. Because none of these provisions contain or incorporate a forum section clause, Craig maintains that he never agreed to litigate claims brought against him in his individual capacity in Texas. Von Graffenreid counters that this language was only intended to address those representations for which Craig was personally liable, not to limit

---

**3.** The Guaranty Agreement recites that it "has been negotiated, executed and delivered at and shall be deemed to have been made in Dallas, Dallas County, Texas." (Def. Mot., Craig Aff., Exh. B. at 38, ¶ 12.14). According to von Graffenreid, this language alone makes venue proper in Dallas. (*See* Plf. Resp. at 7). However, this argument presumes that the recitation, which is contained in the same paragraph as the forum selection clause, is binding on Craig individually.

application of the general provisions of the Guaranty Agreement. The court finds both interpretations reasonable. Therefore, the contract is ambiguous.

■ The parties were given an opportunity to further explain their interpretations of the limiting language above Craig's signature block at an evidentiary hearing held on February 13, 2003. At this hearing, Craig testified that he insisted on limiting his personal liability for the $10 million loan to Fourthstage because he had only recently become affiliated with the company.[4] During negotiations with Bobby Majumder, an attorney representing the Swiss bank, Nicklaus and von Graffenreid, Craig agreed to use the loan proceeds to pay off scheduled debts and accepted personal liability under sections 7.1.8, 7.1.22 and 7.1.23 of the Guaranty Agreement and the Indemnification Addendum. No other contract provisions were discussed, including the forum selection clause. Craig's failure to broach this subject during negotiations suggests that he never intended to exempt himself from the general provisions of the Guaranty Agreement. Thus, the forum selection clause, as well as the other miscellaneous provisions dealing with choice of law, severability, integration and notice, apply with equal force to Craig individually. (*See* Def. Mot., Craig Aff., Exh. B at 32–40, § 12.1, *et seq.*).

This conclusion is bolstered by two other salient facts. First, had Craig truly intended to obligate himself only to specifically enumerated provisions of the contract, he could have clearly expressed this intent in the limiting language above his signature block. It does not necessarily follow that by affirming and agreeing to Sections 7.1.8, 7.1.22 and 7.1.23 of the Agreement and the Indemnification Addendum in his individual capacity, Craig rejected all other contract provisions. Second, without a binding forum selection clause, von Graffenreid could be faced with the prospect of suing the borrower, Fourthstage, in Texas, while having to maintain suit against the indemnitor, Craig, in some other forum.[5] This not only defies logic and common sense, but would be contrary to well-settled rules of contract construction requiring the court to reconcile and give meaning to seemingly inconsistent provisions of the same document. *See IMCO Recycling, Inc. v. Warshauer*, 2001 WL 1041799 at *6 (N.D.Tex. Aug.31, 2001).

3.

Craig further argues that von Graffenreid's claim for negligent misrepresentation is not a matter "arising out of or related to" the Guaranty Agreement and therefore is not governed by the forum selection clause. In its complaint, von Graffenreid alleges:

> In the course of Craig and Agent's dealings, *as well as in the course of the negotiation of the Agreement*, Craig as CEO and Chairman of Fourthstage made various negligent misrepresentations, among others, regarding the prospect of Fourthstage's future revenue, the extent of the company's indebtedness, compromise agreements to reduce [sic] of Fourthstage, *and representations related to the use of the $10 million loan.* In addition, Craig as CEO and Chairman of Fourthstage made certain negligent misrepresentations contained with-

---

4. Two other witnesses, Karl Schaefer and Joe Tippens, also testified at the hearing. However, their testimony was not helpful in determining whether the forum selection clause is binding on Craig in his individual capacity.

5. This issue became moot when Fourthstage filed for bankruptcy.

in financial documentation relating to the company. Defendant Craig made these representations as part of his employment as CEO and Chairman of Fourthstage and as part of a transaction in which Agent had a pecuniary interest. (Plf. Orig. Compl. at 4, ¶ 12) (emphasis added). It is clear from this pleading that the false representations at issue were allegedly made by Craig "in the course of the negotiation of the [Guaranty] Agreement." Consequently, the negligent misrepresentation claim "aris[es] out of" and "relate[s] to" the contract. *See, e.g. Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 587–88, 111 S.Ct. 1522, 1524–25, 113 L.Ed.2d 622 (1991) ("all disputes and matters whatsoever arising under, in connection with or incident to this Contract" included slip-and-fall negligence claim); *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222–23 (5th Cir.), *cert. denied,* 525 U.S. 1055, 119 S.Ct. 620, 142 L.Ed.2d 559 (1998) ("any and all disputes or controversies arising out of or by virtue of this Contract" included tort claims in admiralty case); *Turtur v. Rothschild Registry International, Inc.,* 26 F.3d 304, 309 (2d Cir.1994) ("any controversy arising out of or related to this contract or breach thereof" sufficiently broad enough to encompass fraud claim).

### B.

■ Having decided that the forum selection clause is binding on Craig in his individual capacity, the court must determine whether the clause is enforceable and, if so, the proper deference to which it is entitled in the venue analysis. These issues are governed by federal law. *See Haynsworth v. The Corporation,* 121 F.3d 956, 962 (5th Cir.), *reh'g denied,* 129 F.3d 614 (5th Cir.1997), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998), *citing International Software Systems, Inc. v. Amplicon, Inc.,* 77 F.3d 112,

114–15 (5th Cir.1996) (federal law provides rule of decision on issues related to enforceability of forum selection clause).

### 1.

■ Forum selection clauses may be classified as either mandatory or permissive. Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory. *See, e.g. Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 321 (10th Cir.1997) (forum selection clause provided that "jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado"); *Docksider, Ltd. v. Sea Technology, Ltd.,* 875 F.2d 762, 763–64 (9th Cir.1989) (contract specified that "venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia"); *First National of North America, LLC v. Peavy,* 2002 WL 449582 at *1 (N.D.Tex. Mar.21, 2002) (parties agreed that "all claims shall be litigated only in Collin County, Texas"). By contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, "but do not 'prohibit litigation elsewhere.'" *Excell,* 106 F.3d at 321 (citation omitted). *See, e.g. Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir.1974) ("This agreement shall be construed and enforced according to the law of the State of New York and the parties submit to jurisdiction of the courts of New York.").

The forum selection clause in this case provides, in pertinent part:

> ... Agent or any Guarantor, Borrower and each other Loan Party hereby consents and agrees that the district court of Dallas County, Texas, or, at Agent's option, the United States District Court for the Northern District of Texas, Dallas Division, shall have jurisdiction to hear and determine any claims or dis-

putes between Borrower and/or any other Loan Party and Agent and/or Guarantors pertaining to this Agreement or to any matter arising out of or related to this Agreement.

(Def. Mot., Craig Aff., Exh. B at 38, § 12.14) (capitalization omitted). Von Graffenreid maintains that this forum selection clause is mandatory because it *"requires* that actions arising under the terms of the Agreement be filed in Dallas, Texas federal or state court." (Plf. Resp. at 7) (emphasis added). The court is not so convinced. In *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987), the Ninth Circuit construed a forum selection clause that provided:

> ... Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.

*Id.* at 76. The court held that this language was permissive rather than mandatory:

> Here, the plain meaning of the language is that the Orange County courts shall have jurisdiction over this action. The language says nothing about the Orange County courts having exclusive jurisdiction. The effect of the language is merely that the parties consent to the jurisdiction of the Orange County courts. Although the word "shall" is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction.

*Id.* at 77, *cited with approval in Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–28 (5th Cir.1994).

▇ The language of the forum selection clause in this case is similar to that

construed by the court in *Hunt.* Although the parties agreed that a state district court or federal court in Dallas has jurisdiction to adjudicate any matter "arising out of" or "related to" the Guaranty Agreement, nothing precludes them from initiating litigation elsewhere. The court therefore determines that the forum selection clause is permissive rather than mandatory. *See also John Boutari and Son, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc.,* 22 F.3d 51, 53 (2d Cir.1994) (forum selection clause providing that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" held permissive); *City of New York v. Pullman, Inc.,* 477 F.Supp. 438, 442 n. 11 (S.D.N.Y.1979) ("an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion").

2.

▇ The degree of deference accorded to a forum selection clause varies depending on whether the movant has filed a motion to dismiss for improper venue or a motion to transfer venue. *See Amplicon,* 77 F.3d at 115; *BeautiControl, Inc. v. Burditt,* 2001 WL 1149360 at * 2 (N.D.Tex. Sept.26, 2001). In the context of a motion to dismiss, a forum selection clause is *"prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Enforcement may be unreasonable when:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be de-

prived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (internal quotation marks and citation omitted). Where the contract contains a valid forum selection clause, dismissal rather than transfer is appropriate if the case is filed in the wrong district.[6] *Amplicon*, 77 F.3d at 115. *But see Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 980–81 (2d Cir.1993) (holding that *Bremen* test does not apply to permissive forum selection clause).

The parties contractually agreed that the Dallas Division of the Northern District of Texas "shall have jurisdiction to hear and determine any claims or disputes between [them] pertaining to this [Guaranty] Agreement or to any matter arising out of or related to this Agreement." (Def. Mot., Craig Aff., Exh. B at 38, § 12.14) (capitalization omitted). Additionally, Craig expressly "waive[d] any objection which [he] . . . may have based upon . . . improper venue . . ." (*Id.*). Craig presents no evidence or argument that this forum selection clause or waiver provision is unreasonable. Consequently, venue is proper in this district.

**3.**

■■■■ Alternatively, Craig seeks a transfer of venue under 28 U.S.C. § 1404(a).[7] This statute authorizes a court to transfer a civil action to any other proper judicial district "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In ruling on a motion to transfer venue under section 1404(a), the court should consider various private interest factors, such as: (1) the availability and convenience of the witnesses and parties; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the relative ease of access to sources of proof; (5) the place of the alleged wrong; (6) the possibility of delay and prejudice if the case is transferred; and (7) the plaintiff's right to choose its forum. *N2 Consulting, LLC v. Engineered Fastener Co.*, 2002 WL 31246770 at \*1 (N.D.Tex. Oct.2, 2002), *citing Dupre v. Spanier Marine Corp.*, 810 F.Supp. 823, 825 (S.D.Tex.1993). The "interest of justice" is also an important component of the transfer analysis. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir.1986), *citing Van Dusen v. Barrack*, 376 U.S. 612, 625, 84 S.Ct. 805, 813–14, 11 L.Ed.2d 945 (1964). Factors relevant to this determination include: (1) the pendency of related litigation in another forum; (2) delays due to docket congestion; (3) familiarity with the law that governs the action; and (4) the local interest in having localized controversies resolved

**6.** The relevant statute provides:
The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C. § 1406(a).

**7.** The court notes that Craig did not waive his right to seek a transfer of venue based on the

convenience of the parties or in the interest of justice. Significantly, the waiver contained in the forum selection clause applies only to "any objection which Borrower and such Loan Party may have based upon lack of personal jurisdiction, improper venue or forum *non conveniens* [sic] . . ." (Def. Mot., Craig Aff., Exh. B at 38, § 12.14). The waiver, by its terms, does not extend to motions brought under section 1404(a).

at home. *Id.* at 221, *citing* 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3854 at 439–41 (2d ed.1986).[8] The party seeking a change of venue must demonstrate that the balance of convenience and justice weighs heavily in favor of transfer. *N2 Consulting,* 2002 WL 31246770 at *1, *citing State Street Capital Corp. v. Dente,* 855 F.Supp. 192, 197 (S.D.Tex.1994).

■ Unlike a motion to dismiss, a valid forum selection clause is not outcome determinative of a motion to transfer venue under 28 U.S.C. § 1404(a). The Supreme Court has held that:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus.

*Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988), *quoting Van Dusen,* 84 S.Ct. at 812. Thus, the court should consider the private and public interest factors " 'given the parties' expressed preference' for a specific forum as indicated in the forum selection clause, 'and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power.' " *BeautiControl,* 2001 WL 1149360 at *6, *quoting Stewart,* 108 S.Ct. at 2244.

Other than the forum selection clause, the only private interest factors implicated in this case are the convenience of the witnesses and parties, the availability of process to compel the attendance of unwilling witnesses, and the place of the alleged wrong. The convenience of witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue. *See N2 Consulting,* 2002 WL 31246770 at *3, *citing Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1396 (S.D.Tex.1992). At the evidentiary hearing, Craig testified that most of the former Fourthstage employees who participated in the preparation of financial documents used to obtain the $10 million loan currently reside in Arizona. These witnesses include: (1) Mark Hicks, former Vice President of Professional Services; (2) Stacy LaFrance, former CFO; (3) Michelle Merhar, former Chief Accounting Officer; and (4) Judy Stein, a former employee who worked in the accounting department. Compulsory process over these witnesses would be available in Arizona, but not in Texas. *See Kumar v. Hyundai Semiconductors, Inc.,* 1999 WL 202543 at *4 (N.D.Tex. Mar.31, 1999); *Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.,* 844 F.Supp. 1163, 1166 (S.D.Tex.1994). Other potential witnesses who were involved in negotiating the Guaranty Agreement and conducting a "due diligence" investigation, such as Joe Tippens, Karl Schaefer and Christoph Hubschmid, reside in either Florida or Switzerland. In fact, the only witness located in Texas is Bobby Majumder, the attorney who negotiated and prepared the loan documents on behalf of the

---

**8.** Although the "interest of justice" factors relevant to a section 1404(a) transfer analysis are similar to the public interest factors under the doctrine of *forum non conveniens,* the burden of showing inconvenience is less for a section 1404(a) transfer than for a *forum non conveniens* dismissal. *See Coffey,* 796 F.2d at 220, *citing Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264–65, 70 L.Ed.2d 419 (1981).

Swiss bank, Nicklaus and von Graffenreid. Although Schaefer, who also serves as von Graffenreid's representative for purposes of this litigation, testified that it would take more time and cost more money for him to travel from Zurich, Switzerland to Phoenix, Arizona if the case is transferred, this minor inconvenience to a party representative does not outweigh the hardships to Craig and the non-party witnesses. *See N2 Consulting*, 2002 WL 31246770 at *3 (convenience of party witnesses entitled to less weight because the party is able to compel their attendance at trial).

The evidence further shows that, despite boilerplate language to the contrary, Craig negotiated the loan transaction from Arizona and executed the Guaranty Agreement in Arizona. The misrepresentations allegedly made by Craig involving the financial condition of Fourthstage and his use of the loan proceeds also occurred in Arizona. These factors weigh heavily in favor of transfer.

None of the other private or public interest factors inform the court's decision on the transfer issue. Most of the documents relevant to this case were moved to Austin, Texas after the assets of Fourthstage were purchased by Webvision, a company owned by Schaefer, Nicklaus, and Heinz Winzeler. While Austin is geographically closer to Dallas than to Phoenix, the documents must either be copied and shipped, or counsel must travel to review the documents, regardless of whether the case is transferred. This lawsuit is in its early stages, and the parties have agreed to stay all discovery and pretrial deadlines until the venue issue is resolved. There is no related litigation pending in Arizona and no evidence of the relative docket conditions of the Dallas and Arizona federal courts. Neither forum has a particular interest in hearing this private dispute. Although Texas contract law governs at least part of the case, there is no reason to believe that a federal judge in Arizona cannot properly interpret and apply this law.

██ After carefully weighing the relevant case-specific factors, the court determines that the forum selection clause of the Guaranty Agreement does not justify maintaining venue in the Northern District of Texas. Of particular importance in reaching this decision is the fact that the forum selection clause is permissive rather than mandatory and that this forum lacks any significant connection to the underlying claims. *See G.H. Miller & Co. v. Hanes*, 566 F.Supp. 305, 307–08 (N.D.Ill. 1983). In view of the overwhelming evidence of inconvenience to Craig and the difficulties in obtaining compulsory process over non-party witnesses if this case remains in Dallas, the District of Arizona is a more convenient and appropriate forum for the resolution of this dispute.

### CONCLUSION

The forum selection clause vesting this court with jurisdiction over any matter "arising out of or related to" the Guaranty Agreement is binding on Kevin Craig in his individual capacity. Because venue is proper in the Northern District of Texas, Craig's motion to dismiss for improper venue is denied. However, Craig has established that the balance of convenience and justice weighs heavily in favor of transfer to a federal court in Arizona. Accordingly, his motion to transfer venue is granted. By separate order, this case will be transferred to the United States District Court for the District of Arizona.

SO ORDERED.