REAVLEY, Circuit Judge:
Paul and Lisa Ginter, husband and wife, hired Fred Belcher (an attorney) to help guide them through Louisiana’s complicated process for adopting a child. The attorney-client agreement memorializing Bel-cher’s representation contained a forum-selection clause requiring that any suit related to the contract be filed in Louisiana state court. After a dispute arose between the parties, however, the Ginters filed suit in federal court. Belcher moved to have the case dismissed, citing the forum-selection clause. The district court held that the clause was unenforceable and certified the decision for interlocutory appeal under 28 U.S.C. § 1292(b). We accepted the appeal and now enforce the forum-selection clause.

I. Background

The Ginters, residents of South Carolina, hired Belcher — a family law attorney at Belcher, Prendergast & Laporte in Louisiana — to assist them in the adoption of a child. Later, the Ginters adopted a second child and Belcher again represented them. With respect to the second adoption, the agreement between the Ginters and Bel-cher contained a choice-of-law provision (Louisiana law would govern) and a ehoice-of-forum provision (“Any action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof, shall be instituted only in the 19th Judicial District Court of the State of Louisiana.”). Bel-cher did not suggest to the Ginters that they seek independent counsel to review the fee agreement. The Ginters, however, did have the opportunity to ask questions.
The Ginters filed this suit against Bel-cher and his law firm in federal district court in Louisiana after it was determined the second child suffered from fetal alcohol syndrome because of the birth mother’s use of illegal drugs and alcohol. The Gin-ters alleged that Belcher had made misrepresentations (both negligent and intentional) about the health of the birth mother and that he had breached his fiduciary duty to them by fading to thoroughly investigate the mother’s health.
*441 Belcher responded by filing a motion to dismiss. He argued, among other things, that the choice-of-forum clause in the attorney-client agreement required the Gin-ters to file suit in the “19th Judicial District Court of the State of Louisiana,” not federal court, as the Ginters had done. The district court denied the motion.

II. Discussion

Our only issue is whether the forum-selection clause in the attorney-client agreement between the Ginters and Bel-cher is enforceable and requires this suit to be dismissed. We review the district court’s decision to enforce the forum-selection clause de novo. Haynsworth v. The Corp.[1] We hold that the forum-selection clause is enforceable and that the motion to dismiss should have been granted.
We begin with federal law, not state law, to determine the enforceability of a forum-selection clause.[2] Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a “ ‘heavy burden of proof.’”[3] In cases such as this one, where a litigant in federal court attempts to have a case dismissed based on a contractual provision requiring suit to be filed in state court, the forum-selection clause should be upheld unless the party opposing its enforcement can show that the clause is unreasonable.[4] The clause might be unreasonable when, among other things, its inclusion is the product of “overreaching” or when its enforcement would “contravene a strong public policy of the forum state.”[5] If the contractual forum-selection clause is not unreasonable, we must determine whether it covers the tort claims at issue in this case. Marinechance Shipping Ltd. v. Sebastian.[6]

A. Is the forum-selection clause enforceable?

Two different reasons have been offered to rebut the presumption that the forum-selection clause here is enforceable — that it was the result of overreaching and that it is against Louisiana public policy. We address each in turn.
The district court invalidated the forum-selection clause because it determined that it was the result of overreaching. The court reasoned that the agreement at issue consummated a “business transaction” between the parties and therefore, Belcher — as an attorney — had a professional obligation to advise the Gin-ters that they should seek independent counsel. Because Belcher did not do that, the district court held that the forum-selection clause was the result of overreaching. To support its conclusion, the district court relied on Louisiana State Bar Association v. Bosworth, where the Louisiana Supreme Court upheld the suspension of an attorney who had. entered into a loan agreement with a current client without advising the client to seek independent counsel.[7] According to the court, “[w]hen a lawyer enters into a business transaction with his client where they have differing interests and when the client expects the lawyer to exercise his profession *442 al judgment in that transaction for the protection of the client, the lawyer should at least advise the client to seek outside counsel.”[8]
But the agreement at issue in this case is not a separate “business transaction” between an attorney and client requiring application of the business-transaction rules; instead, all parties agree that it is merely an agreement consummating the attorney-client relationship.[9] The Ginters had no reason to believe that Belcher was using his professional judgment to zealously protect their interests in the very agreement that memorialized their relationship. They might as well argue that Belcher had to look after their interests in determining how much he should be paid. Belcher did not overreach by failing to advise the Gin-ters that they should seek independent legal counsel before signing the attorney-client agreement.
The Ginters argue that even if the forum-selection clause was not the result of overreaching, it is unenforceable because it violates Louisiana public policy. The Ginters contend that the clause is a limitation on Belcher’s malpractice liability, and Louisiana forbids its lawyers from entering into such agreements “unless the client is independently represented in making the agreement.”[10] Here, the Gin-ters were not separately represented, so if a forum-selection clause is a limitation on malpractice liability, it would be unenforceable as a violation of Louisiana public policy. We do not see this forum-selection clause as a limitation on malpractice liability-
The thrust of the Ginters’ argument is that a forum-selection clause limits Bel-cher’s liability because it forces the Gin-ters to litigate in a forum favorable to Belcher. The clause, if enforced, would require the Ginters — out-of-state plaintiffs — to file suit in Louisiana state court against a Louisiana attorney. The Ginters contend that as out-of-state plaintiffs they would be at a disadvantage to Belcher in Louisiana state court. Indeed, the need for diversity jurisdiction rests, in part, on the recognition that a “state tribunal might not be impartial between [its] own citizens” and citizens of another state.[11] The potential advantage to Belcher is underscored by the fact that he is a local attorney. Thus, the Ginters argue, they are less likely to recover in state court, and Belcher’s attempt to have this case litigated in state court is therefore a limitation on his malpractice liability.
Louisiana law is silent on the contours of what constitutes limiting malpractice liability. Nevertheless, we have some conceptual difficulty in stretching the concept of limiting liability to cover situations where an attorney selects a forum where he or she might have some conceivable advantage. Our skepticism is supported by examining how other jurisdictions have han- *443 died a related issue: whether including mandatory-arbitration provisions (a type of forum-selection clause) in an attorney-client agreement is a form of limiting malpractice liability. While no Louisiana authority has addressed this issue, we find Maine’s treatment instructive. Maine’s Professional Ethics Commission, in opining that attorneys may include arbitration provisions in their fee contracts without running afoul of their obligation not to include limitations on their malpractice liability, stated the following:
An agreement to limit liability is, in substance, an agreement that says that even though the lawyer errs in fulfilling certain duties to the client, the lawyer will not be liable to the extent that common and statutory law would otherwise make the lawyer liable. Perhaps if a particular forum had rules that themselves limited liability, then selection of such a forum could fairly be said to limit liability indirectly. Or if the arbitration agreement were a sham, such as an agreement to arbitrate before the lawyer’s partner, then one could argue that its practical effect was to limit liability.[12]
Three members of the Commission dissented, arguing that arbitration provided subtle advantages to an attorney, “which potentially limit the attorney’s liability for malpractice .... ”[13]
We find the majority’s reasoning persuasive and believe Louisiana courts would as well. A mandatory-arbitration clause (or any forum-selection clause) might in a particular case give the lawyer an advantage over the client. But a clause that has only the possibility of reducing by some small percent the chances of an attorney’s being found liable is categorically different from a clause that truly limits liability — for example, a clause that either directly limits liability (e.g., a hold-harmless clause) or a clause that so handicaps a client in a malpractice suit as to be a practical limitation on liability (e.g., a clause requiring suit to be filed within days of the malpractice’s occurring). Other jurisdictions have recognized that requiring a client to arbitrate is not per se a limitation on liability because requiring arbitration does nothing more than set the litigation arena. Connecticut, for example, has stated that an “arbitration clause addresses only the forum for adjudication of a malpractice claim[] and has no limiting effect on the lawyer’s liability to the client.”[14] Ohio has noted that an arbitration provision does not limit malpractice liability because it “shifts resolution of the legal malpractice dispute from a court of law to a different forum.”[15] The New York and Oklahoma ethics commissions have come to similar conclusions, although they also sensibly require the attorney to explain to the client the numerous distinctions between arbitration and court proceedings.[16]
*444 The Ginters attempt to distinguish this authority by pointing out that arbitration is generally seen as beneficial to both sides because of its streamlined procedures. But the very fact that arbitration has such different procedures makes including an arbitration provision into an attorney-client agreement more, not less, objectionable. By agreeing to arbitration, clients are unlikely to be aware of the fact that they are waiving important rights, like the right to appeal and the right to a jury trial. Indeed, as noted above, the New York and Oklahoma ethics commissions have relied on this concern to conclude that their attorneys, before an including an arbitration clause in their fee agreements, must explain to their clients the substantial differences between arbitration and normal litigation. The differences between state and federal court, however, are not nearly as substantial. Thus, there is a much stronger case for upholding a forum-selection clause like the one at issue in this case than an arbitration clause, where the risk of an attorney’s taking advantage of a client is greater.
From all of this we can distill a general rule that including a forum-selection clause into an attorney-client agreement is usually not a limitation on malpractice liability. Instead, it is only a limitation when the selected forum has rules expressly limiting liability or if litigating in that forum would be so unfair as to be a practical limitation on liability.
Here, there is no suggestion that litigating in Louisiana state court would result in an express limitation on liability — Louisiana substantive law will govern this dispute whether it is in federal or state court. The suggestion here is simply that Belcher would gain a subtle strategic advantage by being able to defend himself in state court. But the connection between that advantage and limiting liability is too remote to be considered a practical limitation on Bel-cher’s liability. Perhaps if Belcher had selected a far-flung forum to discourage litigation, including the clause could be viewed as a limitation on liability. Bel-cher, however, has selected an entirely reasonable forum in light of the fact that the fee agreement at issue governed an adoption that would involve events that would take place mostly in Louisiana and would be governed by Louisiana law. The Ginters have not met their heavy burden to establish that the forum-selection clause here should be held unenforceable.

B. Does the forum-selection clause ■ govern the Ginters’ tort causes of action?

The Ginters also argue that even if the forum selection clause is enforceable, it should not apply here because they have not sued for breach of contract — they have sued only under various tort theories. In Marinechance Shipping Ltd. v. Sebastian, we faced a similar situation, where a litigant attempted to sidestep the reach of a contractual forum-selection clause by suing under causes of action sounding in tort.[17] In holding that the forum-selection clause covered the tort causes of action, we foreswore any slavish adherence to a contract/tort distinction; to hold to the contrary would allow a litigant to avoid a forum-selection clause with “artful pleading.”[18] Instead, we examined the language of the forum-selection clause with a common-sense view of the causes of actions to determine whether the clause was broad *445 enough to cover the torts.[19]
Here, the forum-selection clause at issue provides the following: “Any action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof, shall be instituted only in the 19th Judicial District Court of the State of Louisiana.” While the clause speaks of covering suits dealing with the enforcement or breach of the contract, the causes of action here all arise out of Belcher’s contractual relationship with Ginters. Though their causes of action sound in tort, the Ginters are complaining about the failure of Belcher to fulfill his contractual obligations. We conclude that the suit is covered by the forum-selection clause.
In sum, we hold that the forum-selection clause in the attorney-client agreement between the Ginters and Belcher is enforceable and governs the tort claims at issue in this case. Accordingly, we REMAND the case to the district court with instructions that it be dismissed.
REVERSED. Cause REMANDED.

. 121 F.3d 956, 961 (5th Cir. 1997).

. Id. at 962.

. Id. at 963 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972)).

. Id. at 962-63 (citing Int’l Software Sys. v. Amplicon, Inc., 77 F.3d 112, 114-15 (5th Cir.1996)).

. Id. at 963.

. 143 F.3d 216, 222-23 (5th Cir.1998).

. 481 So.2d 567, 571-72 (La.1986).

. Id. at 572.

. In dissent, Judge Dennis contends that the contract could be viewed as a hybrid between an attorney-client agreement and a business transaction. But the Ginters have consistently characterized this agreement as nothing more than an attorney-client agreement; indeed, at oral argument, the Ginters’ attorney expressly rejected the idea that this agreement consummated anything more than an attorney-client relationship. We will not construe the facts in such a way as to contradict the Ginters view of the facts.

. La Rules of Prof'l Conduct 1.8(h)(1) (stating that a lawyer shall not "make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement”).

. Pease v. Peck, 59 U.S. (18 How.) 595, 599, 15 L.Ed. 518 (1855).

. Maine Prof'l Ethics Comm'n, Op. 170 (1999).

. Id.

. Conn. Bar Ass'n, Ethics Op. 99-20, 1999 WL 958027, at *1 n. 2.

. Oh. Bd. of Comm'rs on Grievances and Discipline, Op. 96-9, 1996 WL 734408, at *4 (concluding that, while arbitration provision are not a limitation on malpractice liability, they should not be included in engagement letters because their inclusion violates an attorney’s general duties to protect his or her “clients from agreements that do not serve the client’s best interest”).

. See Ok. Bar Ass’n Legal Ethics Comm., 2000 WL 33389634, at *2-*5, Op. No. 312 (determining that an arbitration clause is not a limitation on liability because it merely determines the forum in which a case will be litigated, but concluding that an attorney should advise the client about the differences between litigating in a court and arbitration); NY County Lawyers' Assoc. Comm. On Prof’l *444 Ethics, Op. 723, 1997 WL 419331, at *2 (same).

. 143 F.3d 216, 220-21 (5th Cir.1998).

. Id. at 222 n. 27.

. Id. at 222.