**Taynereon LeBLANC, Individually, Plaintiff,**

v.

**C.R. ENGLAND, INC. and Jeffrey Price, Defendants.**

**Civil Action No. 3:13–CV–282–B.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 13, 2013.

---

Daryl K. Washington, The Law Offices of Daryl K. Washington PC, Dallas, TX, for Plaintiff.

Valeri C. Williams, Jeffrey O. Marshall, Wilson Elser Moskowitz Edelman & Dicker, LLP, Dallas, TX, for Defendants.

### *ORDER GRANTING MOTION TO TRANSFER*

JANE J. BOYLE, District Judge.

Plaintiff Taynereon LeBlanc ("LeBlanc") filed this Title VII action against her former employer Defendant C.R. England, Inc. ("England") and supervisor Defendant Jeffrey Price ("Price") alleging sexual harassment and assault during her employment at England's trucking company. England denies the allegations and moves the Court to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(3) or to transfer it under 28 U.S.C. § 1404(a) based on a forum selection clause. England maintains that, because the forum selection clause designates "the State of Utah" as the agreed site for any and all claims and litigation arising out of the parties' employment relationship, that venue is improper in this Court. LeBlanc opposes the Motion and challenges the validity of the forum selection clause, arguing that it is not enforceable under Rule 12(b)(3)'s dismissal provisions and that the case is not otherwise subject to transfer under § 1404(a). For the reasons that follow, England' Motion to Dismiss and Motion to Transfer Venue (doc. 7) is **GRANTED in part and DENIED in part.**

## I.

### BACKGROUND [1]

This cases arises out of LeBlanc's brief employment as a truck driver for England's long-haul freight transportation company. In September 2012, LeBlanc, a resident of the State of Texas, was hired in Dallas as a driver by England, a Utah corporation authorized to do business in the State of Texas. Doc. 1, Orig. Comp. ¶¶ 1–3, 8. As a condition of her employment, LeBlanc was required to attend England's truck driving school. *Id.* ¶ 8. While attending the training, at the behest of an England company representative, LeBlanc signed a "Conditional Offer of Employment" which contained a forum selection clause stating that the venue for any "claims" or "litigation" arising out of her employment would be "the State of Utah." Doc. 7, England Mot. at 12 (Ex. A).[2]

---

1. The Court draws it factual account primarily from Plaintiff's Original Complaint. On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint, resolve all conflicts in favor of the plaintiff, and may draw from undisputed facts outside the complaint. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed.Appx. 612, 615 (5th Cir.2007); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir.2009). In considering a motion to transfer venue, the Court may consider affidavits submitted by either party. *See Plum Tree,* *Inc. v. Stockment,* 488 F.2d 754, 756–57 (3d Cir.1973).

2. The forum selection provision contained in the Conditional Offer of Employment signed by LeBlanc read as follows:

 I acknowledge and agree that the venue of any claims filed for injuries, accidents or incidents will be handled through the State of Utah.

 I acknowledge and agree that the venue of litigations that may arise from this employment shall be in the State of Utah.

During the training, LeBlanc was paired with Defendant Price, who was assigned to serve as her driving instructor. Doc. 1, Orig. Comp. ¶ 9. It was Price's alleged inappropriate actions toward LeBlanc during training that underlie the present suit. LeBlanc alleges that on or about October 8, 2012, while traveling with Price as part of England's mandatory truck driving training program, Price made sexual comments to her, used threats of retaliation to manipulate her, and eventually forced LeBlanc into having sexual intercourse with him. *Id.* ¶ 10.

On January 22, 2013, LeBlanc filed this action alleging sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against England as her employer. Doc. 1, Orig. Compl. at 6–7. LeBlanc also includes a claim against Price for assault by "offensive physical contact." *Id.* at 7–8.[3] England denies the allegations, countering that LeBlanc never alerted anyone at the company of the purported offensive sexual conduct and that Price "adamantly" denies that he had sexual relations with Plaintiff. Doc. 7, England Mot. ¶¶ 6, 8–9; Doc. 11, Def. Price Ans. ¶¶ 9–14, 16–19.

On February 13, 2013, England filed the instant Motion to Dismiss and Motion to Transfer Venue (doc. 7) pursuant to Rule 12(b)(3) or, alternatively, 28 U.S.C. § 1404(a), based upon a forum selection clause that purports to limit the venue for all litigation between the parties to the state of Utah. LeBlanc opposes the motion, arguing as an initial matter that a Rule 12(b)(3) dismissal is not an available procedural mechanism for the Court under these circumstances. LeBlanc maintains that, under current Fifth Circuit authority, when, as here, a forum selection clause permits venue in another *federal* district court—as opposed to limiting the venue choice to a state, foreign or arbitral forum—that the court deciding the enforcement issue may not dismiss the case. Instead, according to LeBlanc, the court may only consider a possible transfer of the case under the highly discretionary standards of § 1404(a)'s venue transfer provisions. Doc. 13, Pl.'s Resp. at 5–6 (citing *In re Atlantic Marine Constr. Co., Inc.,* 701 F.3d 736, 741 (5th Cir.2012)). Weighing the § 1404(a) factors, LeBlanc maintains, militates in favor of denying England's motion to transfer and maintaining venue in this district *Id.* at 7–10. The Motion is ripe for decision.

Before turning to the applicable legal standards pertaining to forum selection clauses, it bears mention that there is considerable conflict among the circuits in this area. Specifically, the federal courts have not been consistent on the issue of whether Rule 12(b)(3) or § 1404(a)—each with discrete analytical standards—applies to a given forum selection dispute. Which standard applies is a critical determination because they differ sharply. Thus, the choice of one over the other can be an outcome-determinative decision by the court.

## II.

## LEGAL STANDARDS

*A. Forum Selection Clauses*

*1. From Historical Disfavor to Presumptive Validity after Bremen*

Forum selection clauses were historically viewed with disfavor by American courts

---

I acknowledge and agree that Utah law shall apply exclusively to any such claims or litigation.

Doc. 7, England Mot. at 12 (Ex. A).

**3.** The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on the Title VII claim and supplemental jurisdiction over LeBlanc's assault claim against Price pursuant to 28 U.S.C. § 1367(a).

as attempts to oust courts of their jurisdiction and thus considered to be contrary to public policy. 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1, at 50–58 (3d ed. 2007) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9–11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). This resistance by the courts toward presuit venue contracts shifted in 1972 with the Supreme Court's decision in *Bremen*, an admiralty case. In *Bremen*, the Supreme Court, bowing to the realities of modern-day international trade, departed from the traditional skepticism toward forum selection clauses and upheld a clause, designating "the London Court of Justice" as the site for all disputes, finding it presumptively valid and enforceable unless "shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 8–10, 92 S.Ct. 1907. In rejecting the lower court's ruling that the clause was unenforceable as a matter of public policy, the Supreme Court held that the lower court had given "far too little weight and effect" to the forum selection clause. *Id.* at 8, 92 S.Ct. 1907. The Supreme Court reasoned that the "provincial" attitudes displayed by the court toward these clauses were out-of-step with the "present-day commercial realities" and placed a "heavy hand" on overseas business development by American companies. *Id.* at 9, 12, 15, 92 S.Ct. 1907. In the admiralty context, the *Bremen* court concluded "such clauses are prima facie valid" and enforceable absent a "strong showing" that the clause is unreasonable or otherwise invalid due to fraud or overreaching. *Bremen*, 407 U.S. at 9–10, 14–15, 92 S.Ct. 1907 ("We believe this to be the correct doctrine to be followed by federal district courts sitting in admiralty.").

This strong presumption of validity accorded forum selection clauses by *Bremen* was reiterated by the Supreme Court almost twenty years later in another admiralty case, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (upholding a forum selection clause contained on the passenger's cruise line ticket, noting that the respondents had failed to satisfy their "heavy burden of proof" to set aside the clause). *Bremen*, and later *Carnival Cruise*, instructed courts that, in admiralty cases, forum selection clauses are to be presumed valid and should be enforced by federal courts so long as they are reasonable. 14D Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803.1, at 79 (3d ed. 2007). Notably, however, and perhaps the cause of later confusion, the *Bremen* court cited cases outside of the admiralty and international trade context in support of its ruling on forum selection clauses and *Carnival Cruise* made no reference to the significance of its admiralty jurisdiction in deciding the case. *Id.* at 70–79.

## 2. The Stewart Muddle

A wealth of authority developed in the aftermath of *Bremen*—much of it outside of the narrow admiralty context—adopting its highly deferential standard toward forum selection clauses in a variety of federal cases. *Id.* at 50–58, 70–72 (post-*Bremen*, it became a "common understanding" for courts to apply *Bremen's* "enforced if reasonable" approach to forum selection clauses generally).

Notwithstanding the "strongly hospitable judicial attitude," *Id.* at 52, toward forum selection clauses in the wake of *Bremen*, the trend appeared to come "to an abrupt halt" with the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101

L.Ed.2d 22 (1988).[4] *Stewart* was a diversity action decided more than fifteen years after *Bremen* and two years before *Carnival Cruise*. The Supreme Court granted certiorari in *Stewart* to resolve a circuit split over the *Erie* question of whether enforcement of a forum selection clause in a diversity case was a matter of state or federal law.[5] The plaintiff had filed suit in federal district court in Alabama. The defendant motioned the Alabama district court to either dismiss the case or transfer it to the Southern District of New York based on a forum selection clause. 487 U.S. at 24, 108 S.Ct. 2239. The Alabama district court denied the motion based on Alabama state law. On appeal, the en banc Eleventh Circuit, drawing from *Bremen,* held the clause enforceable under federal law and remanded with instructions to transfer the case to a federal court in Manhattan. *Id.* at 24–25, 92 S.Ct. 1907. The Supreme Court, in answering the *Erie* question, agreed with the Eleventh Circuit that the enforcement of forum selection clauses is a question of federal law. *Id.* at 28, 108 S.Ct. 2239. Although the Supreme Court concurred with the Eleventh Circuit's determination that federal law controlled the inquiry, it sharply disagreed with the Court of Appeals' opinion that the applicable federal law was that announced in *Bremen.* Instead, the Supreme Court in *Stewart* held that the federal standards for analyzing forum selection clauses in diversity cases was to be derived—not from *Bremen*—but from but the venue provisions of 28 U.S.C. § 1404(a). *Id.* at 28–29, 108 S.Ct. 2239; *see also* Taylor, *supra* note 5, at 821–22.[6]

The Supreme Court's change-of-course in *Stewart* from the deferential direction toward forum selection clauses it had forged in *Bremen,* and again in *Carnival Cruise* coming after *Stewart,* has produced a body of less-than-clear jurisprudence regarding the standards for enforcement of these clauses. 14D Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803. 1, at 79–80 (3d ed. 2007). As one commentator summed it up: "[t]he combined rule of [*Bremen,* *Carnival Cruise,* and *Stewart* ] is that a federal court sitting in admiralty jurisdiction should apply a forum selection clause if it is 'reasonable,' but a federal court sitting in diversity or federal question jurisdiction should take the clause into account only as one element in the balancing test required by Section 1404(a)." *Id.* at 79. Commentators have observed that, although the *Stewart* court's view of forum selection clauses was "very different" from *Bremen,* that the Supreme Court did not reverse *Bremen* but made "only an inadequate attempt to distinguish it." Taylor, *supra* note 5, at 822. As a result, from *Bremen, Carnival Cruise,* and *Stewart,* have emerged a patchwork of cases in the federal courts which often blur the distinction between the context and corresponding analytical approaches of *Bremen* and *Carnival Cruise,* on the one hand, and *Stewart* on the other. 14D Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803.1, at 79–80 (3d ed. 2007).

From the muddle, can be drawn a few points of clarity—at least as of this

---

4. *See* Ryan T. Holt, Note, *A Uniform System for the Enforceability of Forum Selection Clauses in Federal Courts,* 62 Vand. L.Rev. 1913, 1920 (2009) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 28, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

5. *See* David H. Taylor, *The Forum Selection Clause: A Tale of Two Concepts,* 66 Temple L.Rev. 785, 821–22 (1993).

6. The Supreme Court indicated that the same analysis would apply to federal question cases. *Stewart,* 487 U.S. at 26 n. 3, 108 S.Ct. 2239.

writing for cases in the Fifth Circuit [7]—as to when the 12(b)(3)/ *Bremen* analytical standard applies as opposed to when the § 1404(a)/ *Stewart* approach applies to a given forum selection clause dispute.[8] Though, as will be addressed, the circuits are split on this issue. *See In re Broadcom Corp.*, No. 141, 2013 WL 1736487, at *3-4 (Fed.Cir. Apr. 23, 2013) (citing *In re Atlantic*, 701 F.3d at 739–741). First, under current Fifth Circuit authority, Rule 12(b)(3) and its *Bremen*-based presumption of validity toward forum selection clauses does not apply where a transfer under § 1404(a) is available. *In re Atlantic*, 701 F.3d at 740 ("dismissal is inappropriate when transfer pursuant to § 1404(a) is available"); 14D Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803.1, at 117 (3d ed. 2007). Second, and conversely, § 1404(a)'s balancing approach "has no application" when transfer to another federal court is *not* possible, such as when a "valid forum selection clause mandates venue in a state or foreign court," because § 1404(a) only allows for transfer *within* the federal system. Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803. 1, at 117 (3d ed. 2007); *see also In re Atlantic*, 701 F.3d at 740 and *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996) (§ 1404(a)'s "broad-based balancing" not appropriate where forum selection clause limits venue to a specific state court).

 Finally, and it stands to reason, under the foregoing line of cases from the Fifth Circuit, that the moving party's choice of procedural mechanisms—Rule 12(b)(3) or § 1404(a)—does not dictate the court's choice of analytical tools. *See* 5B Wright & Miller, Federal Practice and Procedure § 1352, p. 131 (3d ed. Supp. 2013) (courts have rejected parties' motions to dismiss when § 1404(a) transfer is available, noting "a growing number" of federal courts have determined that § 1404(a) transfer is the "preferred method") (internal citations omitted); and *see In re Atlantic*, 701 F.3d at 738 ("[D]ismissal is inappropriate when transfer pursuant to § 1404(a) is available."). That said, only a minority of federal appeals courts follow the Fifth Circuit's approach as to the application of Rule 12(b)(3) versus § 1404(a) to forum selection clauses.

### 3. Current State of the Circuit Conflict—Bremen versus Stewart

As mentioned, only a minority of federal appellate courts follow the approach of the Fifth Circuit toward forum selection clauses. *In re Atlantic*, 701 F.3d at 746–47 (Haynes, J., specially concurring) (collecting cases). Instead, the majority of circuits hold that a Rule 12(b)(3) dismissal is available to parties seeking to enforce forum selection clauses even when a § 1404(a) transfer is possible. *Slater v. Energy Servs., Int'l, Inc.*, 634 F.3d 1326, 1332–33 (11th Cir.2011) (§ 1404(a) appropriate if the party seeking to enforce the forum selection clause seeks a transfer; Rule 12(b)(3) appropriate if the moving party seeks dismissal) (noting splits in sister circuits and collecting cases); *see In re*

---

**7.** Judge Haynes' specially concurring opinion in *In re Atlantic* articulates the circuit split. *In re Atlantic*, 701 F.3d at 743–49 (5th Cir. 2012) (Haynes, J., specially concurring).

**8.** The courts have typically aligned the procedural vehicle for dismissal for improper venue—normally Rule 12(b)(3) or 28 U.S.C. § 1406—with *Bremen's* deferential standard

of "prima facie validity." *In re Atlantic Marine Constr. Co., Inc.*, 701 F.3d 736, 740 (5th Cir.2012) (Rule 12(b)(3)); *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114–16 (5th Cir.1996) (§ 1406(a) dismissal). Hence, the reference to the "12(b)(3)/ *Bremen* " analytical standard.

*Broadcom Corp.,* 2013 WL 1736487, at *3–4 (majority of courts of appeals give effect to forum selection clauses through Rule 12(b)(3) and 28 U.S.C. § 1406).

The Supreme Court recently granted certiorari in *In re Atlantic* to resolve the circuit conflict. *In re Atlantic,* 701 F.3d 736 (5th Cir.2012), *cert. granted,* —— U.S. ——, 133 S.Ct. 1748, 185 L.Ed.2d 784 (2013) (No. 12–929). Whether or not the Supreme Court adopts the majority of circuits' approach, this Court is bound by Fifth Circuit law and *In re Atlantic* dictates the analysis. With that ruling as its guide, the Court turns to the terms of the forum selection clause at issue in this case to determine if it permits venue in a federal forum or, instead, limits venue to a state, foreign or arbitral forum. That determination will, in turn, instruct the Court as to the appropriate procedural vehicle and accompanying analytical standards to apply.

## III.

## ANALYSIS

### A. Forum Selection Clause in this Case

#### 1. Venue in State Court, Federal Court, or Both?

Deciding the proper procedural mechanism—Rule 12(b)(3) or § 1404(a)—for analyzing a forum selection clause turns upon the language of the clause itself. *In re Atlantic,* 701 F.3d at 740. Depending upon the wording of the clause, courts have categorized forum selection clauses as "permissive" or "mandatory" in nature or, in some instances have found the terms of a clause too ambiguously worded to enforce. *See Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127 (5th Cir.1994); *BP Marine Americas v. Geostar Shipping, Co. N.V.,* No. 94–2118, 1995 WL 131056, at *4 (E.D.La. Mar. 22, 1995) (finding a forum selection clause "sufficiently vague to render it unenforceable").

A *mandatory* forum selection clause requires that all litigation be conducted in a specified forum. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia,* 581 F.3d 210, 219 (5th Cir.2009). To be considered mandatory, the clause "must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *Id.* (quoting *City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir.2004)). In contrast, a permissive forum selection clause, often described as a "consent to jurisdiction" clause, authorizes venue in a designated forum but does not prohibit litigation elsewhere. Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803.1, at 123–28 (3d ed. 2007); *Von Graffenreid v. Craig,* 246 F.Supp.2d 553, 561 (N.D.Tex.2003).

When the terms of a forum selection clause are neither clearly mandatory nor permissive, but instead ambiguous in nature, the court applies principles of contract law to discern the parties' intent, if possible. *Caldas & Sons,* 17 F.3d at 127 (citing *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 957 (5th Cir.1974)). As a general rule, "[w]here contract language cannot be given a definite legal meaning and is reasonably susceptible to more than one interpretation, it is ambiguous." *Von Graffenreid,* 246 F.Supp.2d at 558. Under settled contract principles, when a forum selection clause is ambiguous, it should be construed against the drafting party. *Caldas & Sons,* 17 F.3d at 127 (quoting *Keaty,* 503 F.2d at 957); *Tenneco, Inc. v. Greater Lafourche Port Comm'n,* 427 F.2d 1061, 1065 (5th Cir.1970).

Here, the parties do not dispute whether the forum selection clause is mandatory versus permissive in terms. Instead, their debate centers on the somewhat related

but distinct question of whether the language used in the forum selection clause— under the terms of *In re Atlantic*—requires dismissal under 12(b)(3) or transfer under § 1404(a). In other words, the critical issue for the parties is not whether the clause is properly labeled as permissive or mandatory under traditional case authority, but whether the language employed requires outright dismissal or a more tempered consideration under the federal venue transfer statute. With this in mind, the Court turns to the forum selection provisions at issue in this case to determine whether the clause is permissive or mandatory which, in turn, will dictate the proper procedural mechanism for analyzing the motion at issue. The "Conditional Offer of Employment" containing the forum selection provisions, reads as follows:

> I acknowledge and agree that the venue of any claims filed for injuries, accidents or incidents will be handled through the State of Utah.

> I acknowledge and agree that the venue of litigations that may arise from this employment shall be in the State of Utah.

> I acknowledge and agree that Utah law shall apply exclusively to any such claims or litigation.

Doc. 7, England Mot. at 12 (Ex. A).

England maintains that the phrase "handled through the State of Utah" means that any action arising from the employment contract must be filed in a state court of Utah. In other words, England would have the Court read the phrase "handled through the State of Utah" as unambiguously permitting venue only in a *state* court in Utah, and accordingly, that Rule 12(b)(3) is the proper procedural vehicle for the Court's analysis. Doc. 7, England Mot. at 4. LeBlanc, on the other hand, argues that the clause cannot be read so narrowly, and by its terms "does not designate a state court," but instead permits venue in courts in the state of Utah which necessarily includes a state or federal court in Utah. Doc. 13, Pl.'s Resp. at 5–6. That being so, LeBlanc maintains that § 1404(a)'s transfer standards apply to the court's analysis.

Reviewing the language at issue, the Court determines the most reasonable interpretation is that the clause contemplates venue in either state or federal court in Utah. The clause does not contain the type of clear, unequivocal or mandatory language directing that jurisdiction is appropriate only in a designated state forum. In fact, there is no reference whatsoever to "state courts" or any other type of "local" or "county" court in the provision. Instead, the "State of Utah" terminology leaves venue open to both state and federal courts in the event of "claims" or "litigation," given that there are both state and federal courts located and operating in Utah state. This interpretation comports with that of numerous other courts in the Fifth Circuit and elsewhere holding that unless the terminology clearly eliminates federal courts from the venue equation, and there are federal courts operating in the venue described, that venue is proper in federal and state courts. *See Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399–400 (5th Cir.2008) (forum selection clause stating "exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi" permitted venue in state *or* federal court because a federal courthouse was located in that county) (citing *Global Satellite Commc'n Co. v. Starmill U.K., Ltd.*, 378 F.3d 1269, 1272 (11th Cir.2004) (clause limiting venue to "Broward Coun-

ty" included state or federal court)).[9]

Even assuming England's reading of the clause were reasonable, it fails under basic principles of contract interpretation. "[W]hen presented with two reasonable, but conflicting, interpretations of a contract provision, we adopt the interpretation less favorable to the drafter." *Alliance Health Group, LLC,* 553 F.3d at 402 (internal citation omitted). Here, England drafted the clause at issue. Therefore the Court adopts the reasonable interpretation less favorable to England, that the clause provides for venue in state and federal courts in Utah.

In sum, the Court determines that the parties' forum selection clause in this case does not limit venue to an arbitral, foreign or state court forum, but instead also allows the parties to litigate their claims in Utah federal court. That so, the Court, in accord with *In re Atlantic,* must deny England's motion to dismiss the case under Rule 12(b)(3) and instead consider England's motion to transfer venue to a Utah federal court under the standards of § 1404(a).

## B. Transfer Analysis Under 28 U.S.C. § 1404(a)

 As set forth by *In re Atlantic,* when a forum selection clause provides for a different federal forum, as the forum selection clause does here, "a motion to transfer under § 1404 is the proper procedural mechanism for enforcing the clause." 701 F.3d at 739. Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought ..." 28 U.S.C. § 1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir.2008) (internal quotation omitted). In transferring a case, a court seeks "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal quotation omitted).

 In assessing a motion to transfer pursuant to § 1404(a), the Court first must determine whether the judicial district where the defendant is seeking to transfer the case is a district where the claim could have originally been filed. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). If the action could have been brought in the alternate venue, the court must then weigh a series of non-exhaustive private and public interest factors, none of which is given dispositive weight. *In re Volkswagen of Am., Inc.,* 545 F.3d at 315 (citations omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary

---

9. In addition to the cases cited above, numerous courts have found a forum selection clause to designate a state court forum only where there is explicit language doing so. *See, e.g., Klinghoffer v. Mama Fu's Noodle House, Inc.,* No. 3:04–CV–1695–L, 2004 WL 2583632, at *1, *3 (N.D.Tex. Nov. 12, 2004); *Dorsey v. N. Life Ins. Co.,* No. 04–0342, 2004 WL 2496214, at *1, *4 (E.D.La. Nov. 5, 2004).

problems of conflict of laws [or in] the application of foreign law." *Id.* Further, the presence of a forum selection clause is "a significant factor that figures centrally in the district court's calculus." *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239.

██ When conducting a § 1404(a) analysis, the plaintiff's choice of forum is entitled to deference; the movant bears a "good cause" burden and "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am.,* 545 F.3d at 315 (quoting 28 U.S.C. § 1404(a)). If the balancing of these private and public interest factors, along with any other factors the court considers relevant, demonstrates that the alternative venue is "clearly more convenient," the court should grant the requested transfer. *Id.* Although not squarely addressed by the Fifth Circuit, in *In re Atlantic,* the Fifth Circuit did determine that the lower court had not abused its discretion in placing the burden of proving the propriety of transfer on the moving party. 701 F.3d at 741–42 (citing *Stewart,* 487 U.S. at 29, 31, 108 S.Ct. 2239).

██ As a threshold matter, the Court must determine whether the United States District Court for the District of Utah, where England is seeking to transfer the case, is a district where the action could have originally been filed. *In re Volkswagen AG,* 371 F.3d at 203. The parties offer no argument on this threshold issue, apparently presuming that this action could have been properly filed in the District of Utah. This Court likewise concludes this action could have been filed in federal district court in Utah, and thus transfer is possible. England is headquartered in Salt Lake City, Utah, and a "substantial part of the events or omissions" that gave rise to the action occurred in the

District of Utah. *See* 28 U.S.C. §§ 1391(b)(1), 1391(b)(2). Having determined that the case could have been originally brought in the District of Utah, the Court moves to the private interest factors.

### 1. Private interest factors
#### a. The relative ease of access to sources of proof

The first private interest factor is "the relative ease of access to sources of proof." *In re Volkswagen of Am., Inc.,* 545 F.3d at 315. England argues that the alleged sexual misconduct occurred while · LeBlanc and Price were outside of Texas, that LeBlanc interacted with key witnesses in Salt Lake City, Utah, and that the personnel records and evidence pertaining to LeBlanc's claim are kept at company headquarters in Salt Lake City, Utah. Doc. 7, England Mot. at 6. LeBlanc counters that the "majority" of her key witnesses reside "within 100 miles of the Northern District of Texas." Doc. 13, Pl.'s Resp. at 9. LeBlanc also states that she spent less than 24 hours in the state of Utah and did not have "meaningful interaction" with anyone at England's offices. Doc. 13, Pl.'s Resp. at 4.

The Court concludes, having considered the parties' arguments and their respective submissions, that the relative ease of access to sources of proof weighs in favor of transfer to the District of Utah. Plaintiff's personnel files are located in Utah at England's headquarters and England provides an affidavit stating there are at least three England employee witnesses, who reside in Utah, that will be material witnesses in this case. Doc. 7, England Mot. at 6, 18 (Ex. C, Hayes Aff.). Besides Plaintiff's and Price's presence in Texas, Plaintiff fails to point to any other specific factor indicating that proof is more easily accessed in Texas than Utah.

### b. Availability of compulsory process to secure the attendance of witnesses

The second private interest factor is "the availability of compulsory process to secure the attendance of witnesses." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. England argues that at least three key witnesses who interacted with LeBlanc reside in Salt Lake City and are, therefore, not subject to compulsory process except under limited circumstances. Doc. 7, England Mot. at 7. Nonetheless, should the case be transferred to the District of Utah, LeBlanc's witnesses in the Northern District would be over 100 miles away, and thus also not subject to compulsory process, creating a similar problem. Thus, this factor is of neutral weight.

### c. Cost of obtaining the attendance of willing witnesses

The third private interest factor is "the cost of attendance for willing witnesses." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. England avers that the cost for its witnesses to travel to Texas would be approximately $650 in round trip airfare, $150–200 per night for lodging, and approximately $50 per day for meals. Doc. 7, England Mot. at 7. Plaintiff argues, with no corroborating evidence save her own self-serving affidavit, that the cost of bringing Plaintiff's key witnesses to Utah is prohibitive and "would eliminate any chances of her pursuing justice against the Defendants." Doc. 13, Pl.'s Resp. at 9, 16 (Ex. A, LeBlanc Aff.). Plaintiff does not name these witnesses nor does she give an explanation about why the cost of travel to Utah would be prohibitively expensive. While it is England's burden as the movant to demonstrate that the destination venue is clearly more convenient, *In re Volkswagen of Am., Inc.*, 545 F.3d at 315, LeBlanc's bald assertions about prohibitive cost do little to rebut England's argument and evidence. Thus, due to England's proffered witness travel costs and the lack of specific information provided by Plaintiff as to the cost for the attendance of her witnesses, the Court determines that this factor weighs in favor of transfer.

### d. Other practical problems that make trial of a case easy, expeditious, and inexpensive

The parties do not identify any other practical problems that make trial of the case easy, expeditious, and inexpensive.[10] Therefore, this factor is of neutral weight.

### 2. Public Interest Factors

### a. Administrative difficulties flowing from court congestion

Neither party raises any contentions regarding court congestion in the Northern District of Texas as opposed to the District of Utah. Nor is the Court aware of any such factors. Therefore, this factor is of neutral weight.

### b. Local interest in having localized interest decided at home

The second public interest factor is "the local interest in having localized interests decided at home." *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Vasquez v. El Paso II Enters., LLC*, 912 F.Supp.2d 445, 451 (W.D.Tex.2012) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 317–18). England states that none of the material witnesses

---

**10.** England argues that LeBlanc's counsel has "threatened to use his personal influence within the entertainment industry to taint public opinion against [England] by trying the lawsuit in the Dallas media." Doc. 7, England Mot. at 7. LeBlanc's counsel counters that England "cannot point to any evidence supporting this false claim ..." Doc. 13, Pl.'s Resp. at 9. The Court declines to treat these contentions as a factor in its analysis.

or records are in Texas, that the alleged incidents took place outside of Texas, and that Price travels outside of Texas on a regular basis. Doc. 7, England Mot. at 8. Therefore, England argues, that aside from Plaintiff's residence in Texas, there is no localized interest in maintaining venue in the Northern District. *Id.* LeBlanc fails to address this public interest factor. For the reasons England has stated, the Court determines this public interest factor weighs in favor of transfer.

*c. The familiarity with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or the application of foreign law*

The last two public interest factors are "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *In re Volkswagen of Am., Inc.,* 545 F.3d at 315 (modification omitted). England posits that the employment agreement executed between the parties requires that any court apply Utah law. Doc. 7, England Mot. at 9. England further argues that because a court in Utah already has familiarity with the applicable law, it would promote efficiency and exigency in adjudicating the claim to transfer the action to Utah. *Id.* LeBlanc fails to address these public interest factors, but the Court notes that LeBlanc's claim against England is based in federal law, specifically Title VII, while her claim against Price fails to specify upon what legal grounds it is based. Thus, the Court determines the final public interest factors are of negligible weight in either direction.

*3. Forum selection clause*

██ "If applicable and enforceable, a forum selection clause 'will be a significant factor that figures centrally in the district court's [venue transfer] calculus.' " *Webb v. Settoon Towing, LLC,* No. 3–12–143, 2012 WL 5967962, at *2 (S.D.Tex. Nov. 28, 2012) (quoting *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239). Before the Court can consider enforcing a forum selection clause, it "must first determine 'whether the clause applies to the type of claims asserted in the lawsuit.' " *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 Fed.Appx. 612, 616 (5th Cir.2007) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 692 (8th Cir.1997)). In this inquiry, the Court looks to "the language of the parties' contracts to determine which causes of action are governed by the forum selection clause." *Id.* (quoting *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir.1998)).

██ Here, the parties' only discussion of the applicability of the forum selection clause to the claims at issue comes in Plaintiff's Response to England's Motion, when she states that "[t]he forum selection clause Defendant is trying to enforce does not apply to Plaintiff's claims against Defendant Price." Doc. 13, Pl.'s Resp. 10. Plaintiff fails to offer any explanation as to why the forum selection clause does not apply to Price, or to otherwise challenge the applicability of the forum selection clause to this action. The relevant language from the forum selection clause states that "the venue of litigations that may arise from this employment shall be in the State of Utah." Doc. 7, England Mot. (Ex. A). In the absence of any argument or authority from Plaintiff, the Court reads this contractual language by its plain terms to mean that litigation arising from Plaintiff's employment with England is subject to the forum selection clause. Because the facts underlying this suit occurred in the course of Plaintiff's employment with England, the forum selection

clause applies to Plaintiff's claims directed at both England and Price.

 Having decided that the forum selection clause is applicable to all claims in this action, the Court now must determine if the forum selection clause is enforceable. Federal law determines whether the forum selection clause is enforceable. *Ginter v. Belcher, Prendergast & Laporte,* 536 F.3d 439, 441 (5th Cir. 2008). Forum selection clauses "are presumed enforceable,[11] and ... should be upheld unless the party opposing its enforcement can show that the clause is unreasonable." *Id.* A forum selection clause may be unreasonable where:

(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir.1997) (internal quotation omitted).

 Plaintiff argues that the forum selection clause here is unreasonable because transfer to Utah would be so gravely difficult and inconvenient that Plaintiff would for all practical purposes be deprived of her day in court. *See id.* In support,

Plaintiff offers her own affidavit that provides in relevant part:

My current financial conditions would make it impossible to have my day in court should I have to travel to Utah to pursue my claims against the Defendants. I currently have income of $1,000 per month. I'm unable to afford to travel to Utah and could not afford to pay for a hotel while in Utah for trial. Additionally, my current physical conditions would also make it impossible for me to be in Utah for a short or extended period of time.

Doc. 13, Pl.'s Resp. 16 (LeBlanc Aff.).

Defendant fails to address Plaintiff's argument that enforcement of the forum selection clause would deprive Plaintiff of her day in court, and thus be unreasonable. For her part, aside from stating transfer would deprive Plaintiff of her day in court, Plaintiff's argument is similarly devoid of any cited authority and instead relies on LeBlanc's own generalized description of her economic and physical circumstances. In reaching the conclusion that her "current financial conditions [and] ... current physical conditions ... would make it impossible" to have her day in court in Utah, *id.,* LeBlanc fails to specifically describe why travel to Utah would be impossible. Instead of *describing* the "grave inconvenience" of litigating this action in Utah, LeBlanc merely *concludes* transfer would deprive her of her day in court. Without a more detailed description of LeBlanc's economic and physical conditions that would allegedly make litigation in Utah impossible, the Court determines that LeBlanc has failed to meet her

---

**11.** This statement that forum selection clauses are "presumed enforceable" should not be interpreted to suggest that the Court is relying upon the *Bremen* standard in its § 1404(a) analysis. As addressed at length in the "Legal Standards" portion of this Order of Transfer, it is the *Stewart* case that guides this analysis. Nonetheless, as *Stewart* provides, the presence of a forum selection clause is a "significant factor" in the § 1404(a) analysis. Hence, the Court considers the clause's presumptive enforceability not as a threshold consideration in its transfer analysis (*Bremen*) but as a factor, albeit a significant one in its § 1404(a) analysis.

burden to establish the forum selection clause is unreasonable. *See Pugh v. Arrow Elecs., Inc.,* 304 F.Supp.2d 890, 896 (N.D.Tex.2003) (granting transfer based on forum selection clause when plaintiff failed to present convincing evidence that costs were so grave or unfair to deprive him of his day in court).

Based on the foregoing analysis of the forum selection clause, the Court determines the clause is applicable to this action and enforceable. Therefore, in light of *Stewart's* guidance that a forum selection clause is "a significant factor that figures centrally" in the district court's § 1404(a) transfer analysis, the Court determines the forum selection clause here weighs heavily in favor of transfer to the District of Utah. *See Stewart,* 487 U.S. at 29, 108 S.Ct. 2239.

On the balance of the private interest factors, public interest factors, and the forum selection clause, the Court decides that England has demonstrated good cause that transfer to the United States District Court for the District of Utah is proper "[f]or the convenience of parties and witnesses, in the interest of justice." *See* 28 U.S.C. § 1404(a).

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Dismiss and Motion to Transfer Venue (doc. 7). England's Motion to Dismiss is **DENIED** and England's Motion to Transfer is **GRANTED**. This action is hereby **TRANSFERRED** to the United States District Court for the District of Utah.

**SO ORDERED.**