United States Court of Appeals,

Fifth Circuit.

No. 92-7587.

CALDAS & SONS, INC. and Angelo Caldas, Plaintiffs-Appellants, Cross-Appellees,

v.

Ben H. WILLINGHAM, Jr., et al., Defendants,

Ben H. Willingham, Jr., et al., Defendants-Appellees, Cross-Appellants.

Andrew R. CARR and Virginia E. Carr, Plaintiffs,

v.

G. Rives NEBLETT, et al., Defendants.

March 29, 1994.

Appeals from the United States District Court for the Northern District of Mississippi.

Before WIENER and EMILIO M. GARZA, Circuit Judges, and CLEMENT*, District Judge.

CLEMENT, District Judge:

Plaintiffs-Appellants/Cross Appellees Angelo Caldas & Caldas & Sons, Inc. (collectively, "Caldas") appeal the district court's grant of summary judgment in favor of Defendants-Appellees/Cross Appellants Corim Agri, Inc., Corim, Inc. and Ben H. Willingham, Jr. (collectively, the "Corim defendants") for Caldas's failure to raise a genuine issue of material fact in connection with agricultural real estate transactions in Mississippi. The Corim defendants have cross appealed, arguing that the district court erred in refusing to dismiss Caldas' complaint for lack of jurisdiction, given a forum selection clause in the principal contract under consideration. After reviewing the record de novo, we find the presence of sufficient summary judgment evidence to constitute genuine issues of material fact in connection with Caldas' claims and therefore reverse the district court's grant of summary judgment dismissing those claims. But we affirm the district court's refusal to dismiss Caldas' complaint on the basis of the forum selection clause.

I

*District Judge of the Eastern District of Louisiana, sitting by designation.

FACTS AND PROCEEDINGS

This case arose out of two sales contracts for the same parcel of farmland in Bolivar County, Mississippi. The tract was known as Cloverdale Place; in one contract Corim Agri, Inc. was the buyer; in the other Corim Agri, Inc. was the seller. The other parties to those contracts—the initial seller and the ultimate buyer—were not aware of each other.

In 1981, Andrew and Virginia Carr, plaintiffs below,[1] decided to sell some of their rural real estate holdings. Mr. Carr reached an understanding regarding the sale of Cloverdale Place with G. Rives Neblett, Mr. Carr's neighbor, real estate broker, and attorney: Carr would sell Cloverdale Place if Neblett could find a willing buyer. Although no price was placed on the property, Carr and Neblett agreed that once a purchaser was found who was willing to pay a price satisfactory to Carr, Neblett would take care of all details needed to consummate the sale.

Although several prospective purchasers looked at Cloverdale Place between 1982 and 1984, no satisfactory offer was forthcoming. In 1984, Ben Willingham, Jr., president of defendant Corim Agri, Inc.[2] contacted Neblett about the property. In turn, Carr was informed by Neblett that he had found a buyer willing to pay $1,100 per acre for Cloverdale Place, a price Carr found satisfactory. Neblett and Carr agreed that Carr would receive $1,050 per acre net, with the remaining $50 per acre to be received by Neblett as his broker's commission. On April 25, 1984, Carr granted Corim Agri, Inc. a thirty-day option which specified that if the option were exercised Carr would sell Cloverdale Place to Corim Agri, Inc. for a net price of $1,050 per acre, and Corim Agri, Inc. would pay Carr's broker, Neblett, an additional $50 per acre as his commission. If the option were thus exercised and the sale consummated, Carr would receive $1,342,500.00. The option was not exercised, however; rather, it expired on its own terms on May 25, 1984. Then, on July 19, 1984, Carr and Corim Agri, Inc. entered into a Contract of Sale for Cloverdale Place, on essentially the same terms and for the

---

[1]Having reached a compromise with the defendants, the Carrs do not appeal the district court's decision. Accordingly, the district court's rulings as they relate to the Carrs are not before this court.

[2]Corim Agri, Inc. was a wholly-owned subsidiary of defendant Corim, Inc. Sometime after its purchase of Cloverdale Place, Corim Agri, Inc. was merged into Corim, Inc.

same price as had been provided in the option.

Prior to the execution of this contract for Carr to sell Cloverdale Place to Corim Agri, Inc., however, plaintiff Angelo Caldas, a native of Portugal, had entered the picture. On June 13, 1984, Rolf Schlegel, a Corim employee, wrote to Caldas regarding his possible purchase of farmland in the United States. Schlegel indicated that Corim had identified three parcels of land for Caldas to consider. Although not identified by name, one of the three was Cloverdale Place. On July 16, 1984, Caldas and Corim Inc., through its president, Willingham, signed a sales agreement for Cloverdale Place. In that contract, though, Corim, Inc. disguised the identity of Cloverdale Place, using the pseudonym Walnut Bayou Farm. Caldas agreed to pay $1,277,900.00 for the property. By entering the agreement with Caldas on July 16, 1984, Corim, Inc. had agreed to "sell" Cloverdale Place before it either owned the property or had an enforceable contract entitling Corim to purchase it from Carr.

The Corim-Caldas contract also provided that Corim would manage the agricultural operations thereon for Caldas. At the time the sales agreement was executed, the parties agreed that Corim, Inc. would form a United States corporation, Caldas & Sons, Inc., to take title to the property. As noted above, three days *after* the Corim-Caldas contract was consummated, Corim obtained the right to purchase the property from Carr. Neblett, acting as attorney for all parties, closed both land sales—Carr to Corim and Corim to Caldas—on December 31, 1984. No one from the Caldas organization attended the closing.

In 1989, Steve Kovac, who by then had replaced Corim, Inc. as Caldas' manager of Cloverdale Place following the expiration of the Corim management contract, informed the Carrs that Caldas had purchased the property from Corim, Inc. for approximately $1,300 per acre simultaneously with the Carrs' sale of the property to Corim for a net $1,050 per acre. Upon learning this, Carr filed suit against Ben H. Willingham, Jr., Corim Agri, Inc., Corim, Inc., Carl W. Stowe (the "Corim defendants") and Neblett. Shortly thereafter, Caldas & Sons, Inc. filed the action now before us on appeal.

Caldas & Sons, Inc.'s complaint against the Corim defendants and G. Rives Neblett sought civil damages for RICO violations, breach of fiduciary duty as both purchasing and managing agent,

breach of fiduciary duty as a corporate officer, breach of contract, fraud, intentional misrepresentation, deceit and trickery, legal malpractice, conspiracy and punitive damages. The complaint was eventually amended to add Angelo Caldas, individually, as a plaintiff.

In the Caldas action the Corim defendants filed a number of preliminary motions in attempts to dispose of the litigation. They filed two motions to dismiss based on a purported forum selection clause in the Corim-Caldas contract. The motions alleged lack of jurisdiction, both personal and subject matter, as well as improper venue. As these motions were predicated on matters beyond the pleadings, the district court treated them as motions for summary judgment pursuant to Rule 12(c) and denied all motions. The court held that although forum selection clauses are not invalid per se, the court was not compelled by the mere presence of such a clause to dismiss the case. Specifically, the court found the clause's language "sufficiently vague to render [it] ambiguous" as to the parties' intent. As the clause was susceptible of two reasonable yet conflicting interpretations, the court construed the language against Corim, which had drafted the clause, and refused to dismiss the case.

Alternatively, the court reasoned that even if the clause were unambiguous, it was clearly permissive rather than mandatory. The clause merely evidenced the consent of the parties to the jurisdiction of the Zurich courts. In other words, regardless of the parties' agreement that disputes could be litigated in Zurich, nothing in the contract mandated Zurich as the exclusive forum. As noted, the Corim defendants have cross appealed the district court's denial of their motions to dismiss.

The Corim defendants also filed motions for summary judgment on the merits. These motions were granted by the district court. The court granted summary judgment in favor of all defendants on plaintiff's RICO claims and granted summary judgment in favor of all of the Corim defendants on the claims of breach of fiduciary duty as purchasing agent, fraud, and conspiracy to defraud. The court subsequently amended its ruling, on the motion of the Corim defendants, to dismiss Caldas' breach of contract claim as well. Subsequent to the court's order granting summary judgment, the parties agreed to dismiss with prejudice all of the claims not theretofore dismissed by the court's summary judgment. After the Caldas plaintiffs filed their notice of appeal, the parties filed a joint motion of dismissal of the appeal as to defendant Neblett, and we granted that motion. The plaintiffs

do not appeal the district court's rulings on their RICO claims. Accordingly, the issues presented for review are (1) the district court's refusal to dismiss on forum selection grounds, and (2) the district court's grant of summary judgment dismissing plaintiffs' claims of breach of fiduciary duty as purchasing agent, breach of contract, fraud, intentional misrepresentation, and conspiracy.

## II

## ANALYSIS

A. *Standard of Review*

"We review a summary judgment de novo, applying the same criteria as the district court." *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A grant of summary judgment is proper if the moving party demonstrates that there are no genuine issues of material fact. *See id.* at 248, 106 S.Ct. at 2510. Once the moving party makes this showing, the nonmovant must come forward with summary judgment evidence sufficient to establish the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.) ("the nonmovant must come forward with evidence establishing each of the challenged elements of its case for which the nonmovant will bear the burden of proof at trial"), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

B. *Forum Selection Clause*

The contract between Corim, Inc. and Caldas contained a one sentence forum selection clause, which provided that "[t]he laws and courts of Zurich are applicable." The Corim defendants contend that this clause mandates Zurich as the exclusive forum for the adjudication of disputes arising out of the contract. In opposition, Caldas argues that the clause is permissive only, so that this dispute may be litigated at other places—including Mississippi—where venue and jurisdiction are proper. Caldas thus seems to argue also that, even if the forum selection clause should be found to

be binding, it is not *exclusive.*

The Corim defendants base their argument on the Supreme Court's opinion in *M/S BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *M/S BREMEN,* the Court was confronted with the question of whether a *mandatory* forum selection clause is enforceable. *Id.* at 2, 92 S.Ct. at 1909. The Court overruled its prior jurisprudence and held that such clauses are enforceable. The Court vacated and remanded the case, stating that "[t]here are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overwhelming bargaining power, such as that involved here, should be given full effect." *Id.* at 12-13, 92 S.Ct. at 1914-15. The Court did not specify the circumstances that would render a forum selection clause unenforceable although it did address the factors that made it reasonable to enforce the particular clause being considered.

We need not here consider enforceability of a mandatory forum selection clause, however.[3] In *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir.1974), we found that a forum selection clause[4] fell short of being mandatory and reversed the district court's dismissal for want of jurisdiction. *Keaty,* 503 F.2d at 957. Accordingly, before determining whether a forum selection clause is mandatory and thus enforceable under the *M/S BREMEN* line of cases, we must determine whether we are here presented with a mandatory forum selection clause or merely a permissive one.

Caldas argued, and the district court agreed, that the forum selection clause at issue at most permitted claims arising out of the contract to be tried in the Zurich courts. The district court held that, as the language of the clause only provides that the Zurich courts would have jurisdiction over

---

[3]There is a split among the circuits as to what law should be applied to determine the enforceability of forum selection clauses. *See Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 512 (9th Cir.1988). This circuit has yet to rule on the issue. As we find the clause at issue permissive, the *Manetti-Farrow* choice-of-law question is moot, so we will not attempt to answer it.

[4]The forum selection clause in *Keaty* provided that:

> This agreement shall be ... enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York.

*Keaty,* 503 F.2d at 956.

such claims, the plaintiffs were not barred from prosecuting this action elsewhere, including in the proper courts of the United States. Again, the clause at issue in this case provided that "[t]he law and courts of Zurich shall be applicable." Finding this language ambiguous, the district court construed it against Corim, the drafting party. *See Keaty,* 503 F.2d at 957 (holding that a forum selection clause "subject to opposing, yet reasonable, interpretations" should be construed against the drafting party). Accordingly, the court held that the clause was permissive.

Even though the clause now before us uses "shall," which is generally mandatory, this clause need not necessarily be classified as mandatory. In *Keaty,* we held that, despite the presence of the word "shall," the clause was permissive. The Ninth Circuit engaged in a similar analysis in *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75 (9th Cir.1987), when confronted with a forum selection clause. The disputed clause in *Hunt* provided that

> Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, [and] interpretation ... of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.

*Id.* at 76. The Ninth Circuit held that

> [a]lthough the word "shall" is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction. Thus, [the appellant] cannot object to litigation in the Orange County Superior Court on the ground that the court lacks personal jurisdiction.

*Id.* at 77.

The same analysis applies here. The only thing certain about the clause contained in the Corim-Caldas contract is that the parties consented to the personal jurisdiction of the Zurich courts. Beyond that, however, the language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract. As we stated in *Keaty,* "this is not a situation where the contract, on its face, clearly limits actions thereunder to the courts of a specified locale." *Keaty,* 503 F.2d at 956. Our *Keaty* opinion indicated that language similar to that presented to the Supreme Court in *M/S BREMEN* is the kind required for a court to find an unambiguous, mandatory forum selection clause. *Id.* at 956-57. The forum selection clause before the Supreme Court in *M/S BREMEN* specified that "[a]ny dispute arising must be treated before the London Court of Justice." *M/S BREMEN,* 407 U.S. at 2, 92 S.Ct. at 1909. The

language of the clause here at issue is not nearly as clear, unequivocal and mandatory as that presented to the Supreme Court. In light of such ambiguity and our own precedents, the language is properly construed against Corim as a permissive forum selection clause. Thus the district court did not err in retaining jurisdiction.

C. *Agency*

The district court found that there was no genuine issue of material fact regarding the existence of an agency relationship between Corim and Caldas. The court acknowledged that the Corim-Caldas relationship was clearly more than that of buyer/seller and that "at first glance Corim's actions could be construed as consistent with plaintiff's broker theory." Nevertheless, the court held that the contractual relationship between Corim and Caldas was limited to that of buyer and seller.

The plaintiffs did not rest on their pleadings. Rather, in conformity with the dictates of both the Supreme Court and this circuit, they introduced summary judgment evidence establishing a genuine issue of material fact regarding the agency question.

Plaintiffs produced a letter written by Rolf Schlegel, a Corim employee. In the letter Corim offered "to be of service to [Caldas] in finding a real estate asset that satisfies your investment objectives." This letter is susceptible of differing constructions. It could either be construed as an offer to sell or, as Caldas contends, as an offer to serve as a broker, more specifically as a "finder."

Additionally, Caldas urges that the timing of the transaction is evidence supporting its construction. The Corim-Caldas contract was signed three days *prior to* the signing of the Carr-Corim contract. This timing, Caldas asserts, supports a finding that Corim was acting as Caldas's agent. Furthermore, Caldas argues that the fact that Corim was to manage Cloverdale Place for Caldas supports the contention that there was an agency relationship. And the suspicious use of the pseudonym for Cloverdale Place, suggests the existence of an undisclosed double-broker rather than a mere seller of real estate. Although these evidentiary items alone may not be sufficient to support a motion for summary judgment in favor of Caldas, they certainly do present a formidable obstacle to the summary judgment motion of the Corim defendants.

On the other side of the equation is the contract itself, which does refer to a buyer and a seller,

not an agent and a principal.  Additionally, the contract obligates Caldas to pay Corim, not Carr; Caldas negotiated the payment schedule with Corim, not Carr.  The district court found that these factors indicated a buyer-seller relationship;  and there is no question but that those factors do weigh in favor of Corim's theory of the relationship.  In a summary judgment context, however, the district court is not permitted to weigh the evidence.

We conclude that in this case Caldas presented evidence creating genuine issues of material fact.  The evidence before the district court in the form of the letter from Corim to Caldas, the suspense and timing of the purchase agreement covering Cloverdale, the management contract, and the facially suspect, secret relationship between Corim and Neblett which was intentionally kept from the Carrs and the Caldas defendants, could lead a rational trier of fact to find for Caldas.  We are convinced that there are genuine issues of fact in the instant case sufficient to require a trial.  Cf. *Friou v. Phillips Petroleum Co.,* 948 F.2d 972, 974 (5th Cir.1991).  Specifically, the aforementioned evidence, when considered in context with all other summary judgment evidence and with the parties' allegations in the pleadings, presents contested factual issues to be determined by the trier of facts. The Corim-Caldas contract cannot be viewed in a vacuum;  it must be considered in light of the Carr-Corim Agreement, the correspondence between employees of Corim and Caldas, the arrangements between Carr and Neblett, the arrangement between Neblett and Corim, and the timing of the various events.  We make no prognostication on which version of the facts may ultimately be credited by the trier;  neither do we predict the ultimate outcome of the litigation.  We recognize nonetheless that a version of the facts supported by summary judgment evidence is at least susceptible of an interpretation placing Corim in the position of a soliciting finder of property for Caldas but acting duplicitously (with or without the active and knowing collaboration of Neblett), i.e. (1) to mislead Carr on the price to be paid for Cloverdale Place, indicating that the only commission would be the $50.00 per acre payable to Neblett;  (2) hindering the discovery by Caldas of the actual identity of the property in question by using the pseudonym "Walnut Bayou Farm";  and (3) leading Caldas to believe, at least implicitly, that all brokerage and finders' fees would be paid out of the higher purchase price remitted by Caldas, while intending to share the profit on the sale of December 31,

1984, with Neblett, who would (and did) also receive the $50.00 per acre commission (and presumably legal fees as well), albeit the existence of the profit, i.e., the difference between $1100 per acre and $1300 per acre, was deliberately concealed from both Carr and Caldas. Even though Caldas may ultimately fail to convince the trier of facts that that is what happened, there is sufficient summary judgment evidence, when considered in context, to allow Caldas to proceed to trial on a theory of agency, whether as broker or finder, plus the possibility of fraud and conspiracy under such circumstances.

The district court's ruling on agency was the foundation of its grant of summary judgment on the issues of breach of fiduciary duty as purchasing agent, fraud, conspiracy to defraud, and breach of contract. Once the district court determined to its satisfaction that there was no agency relationship, it was able to dispose quickly of these claims.[5] All of these claims are predicated on the existence of a duty owed by Corim to Caldas; if there were no such duty then Corim was entitled to judgment as a matter of law. As the existence of that duty is a question for the trier of fact under the circumstances here presented, the summary judgment granted in favor of defendants on plaintiffs' claims of breach of fiduciary duty as purchasing agent, fraud, conspiracy to defraud, and breach of contract must also fall.

AFFIRMED in part, REVERSED in part, and REMANDED.

---

[5]The district court stated that "[i]n the absence of a fiduciary relationship with either party, this court will not relieve either party of the consequences of their acts and subsequent dissatisfaction concerning the price ... paid by Caldas."