

NUMBER 13-14-00126-CV

COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBURG

IN RE THOMAS AGRESTI

On Petition for Writ of Mandamus.

NUMBER 13-14-00149-CV

COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBURG

IN RE ING AMERICA EQUITIES, INC. AND SECURITY LIFE OF DENVER
INSURANCE COMPANY

On Petition for Writ of Mandamus.

NUMBER 13-14-00154-CV

COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBURG

IN RE AMERICAN GENERAL LIFE INSURANCE COMPANY AND
AMERICAN INTERNATIONAL GROUP, INC.

On Petition for Writ of Mandamus.

NUMBER 13-14-00168-CV

COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI - EDINBURG

IN RE NELSON P. TODD, ORCHARD FINANCIAL GROUP, LLC, AND
ORCHARD ADMINISTRATORS, LLC

On Petition for Writ of Mandamus.

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Valdez[1]

Raul A. Marquez M.D. and Rosario Parra, M.D., Trustee of the Raul A. Marquez Trust Fund dated 9/03/03 (the "Marquez Trust"), brought suit against American International Group Inc., American General Life Insurance Company, ING American Equities Inc., ING Security Life Insurance Company of America, Security Life of Denver Insurance Company, Thomas Agresti, Orchard Financial Group, LLC, Orchard

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

Administrators, LLC, Nelson P. Todd, and Alberto Morales for, inter alia, misrepresentation, fraud, civil conspiracy, negligent misrepresentation, and unjust enrichment pertaining to the defendants' financial planning services and the purchase and sale of premium-financed life insurance policies. By four consolidated original proceedings, the defendants, relators herein, contend that the trial court erred in denying their motions to dismiss the underlying lawsuit based on a forum selection clause in the representation agreement between Dr. Marquez and Agresti:[2] Because we conclude that the forum selection clause is permissive rather than mandatory, we deny the petitions for writ of mandamus.

## I. BACKGROUND

On September 2, 2003, Dr. Marquez signed an Agreement for Representation ("the Agreement") with attorney Thomas Agresti and his firm, Agresti & Associates, L.L.C. (collectively "Agresti"). The Agreement provided that Agresti would provide services to Dr. Marquez including "implementation of your 2003 Tax Plan" and "ongoing general legal matters." The Agreement specifically sets out the scope of services that Agresti would provide as follows:

> We will collect all necessary data from you or your designated agent. After a comprehensive analysis we shall prepare an Initial Plan Presentation of our findings which shall include recommendations of appropriate strategies, financial impact of these strategies, costs to implement and costs to maintain. These recommendations will become your Plan. After a thorough review and discussion of your Plan, we will be responsible for implementing and maintaining the agreed upon portions of your Plan, as indicated in the attached Schedule A, in a manner that best meets your objectives.

[2] The consolidated original proceedings are: *In re Agresti*, filed in cause number 13-14-00126-CV, *In re ING America Equities, Inc. and Security Life of Denver Insurance Company*, filed in cause number 13-14-00149-CV, *In re American General Life Insurance Company and American International Group, Inc.*, filed in cause number 13-14-00154-CV, and *In re Nelson P. Todd, Orchard Financial Group, LLC, and Orchard Administrators, LLC*, filed in cause number 13-14-00168-CV. Alberto Morales, although a defendant in the proceedings below, opposes the motions to dismiss on the basis of the forum selection clause and appears in these original proceedings as a real party in interest.

The Agreement further details Dr. Marquez's responsibilities under the Agreement and outlines the fee structure for Agresti and the other professionals who would be involved in the contemplated transactions. The Agreement contains the forum selection clause at issue in these original proceedings. The paragraph containing the clause provides:

> This Agreement, and the application or interpretation thereof, shall be governed exclusively by its terms and by the laws of the State of Colorado. You agree that, in any action relating to or arising from this Agreement, the State of Colorado is the proper jurisdiction and that Denver is the proper venue to hear any such action.

On September 12, 2003, Agresti sent the Initial Plan Presentation (the "Plan") contemplated in the Agreement to Dr. Marquez. The Plan proposed, in part, that an irrevocable trust be created to hold a large life insurance policy on Dr. Marquez and that the benefits of the policy would be used to offset the estate taxes that would be due upon Dr. Marquez's death. Under the Plan, the trust would obtain a loan to finance the payment of the premiums for the policy, and while the policy itself would serve as the primary source of collateral for the loan, Dr. Marquez would initially need to provide additional outside collateral for the loan. This outside collateral was to be a letter of credit pledged by Dr. Marquez. The parties proceeded to execute the Agreement and Plan.

Six years later, on September 19, 2009, Dr. Marquez and the Marquez Trust brought suit against the relators alleging that:

> Beginning in 2003, Defendants, individually and collectively, led Dr. Raul A. Marquez and his wife, Dr. Rosario Parra, down a path toward what they were told would be their future financial security. The path ended up leading them directly into a financial storm of greed, recklessness and fraud.

> According to Defendants, the investment to obtain financial security was life insurance. The price for such financial security was minimal,

4

because it would be financed by others and the risk for such financial security was low because interest rates were so low and investments were doing so well. The investment would pay for itself. Beginning on December 28, 2003, when a life insurance policy was issued by the ING Defendants, Defendants flipped and churned life insurance policies and charged hundreds of thousands of dollars for premiums, interest, management fees, load fees, policy fees and numerous other expenses, all designed to take as much as they could from Dr. Marquez. Finally, after five and a half years of the financial fiasco, Dr. Raul A. Marquez found himself out of pocket for millions of dollars, and without any life insurance to protect his estate.

On January 25, 2011, Agresti filed a motion to dismiss the lawsuit based on the forum selection clause in the Agreement. In separate motions, the other relators also filed motions to dismiss based on the forum selection clause in the Agreement.

On April 4, 2011, the trial court heard arguments on the motions to dismiss and, at that hearing, requested additional briefing from the parties. On May 21, 2013, the trial court issued an order denying the relators' motions to dismiss.[3] These original proceedings ensued. The relators contend generally that the trial court abused its discretion in denying their motions to dismiss because the forum selection clause in the Agreement requires that the lawsuit be filed in Colorado. The Court has requested and received responses to the petitions from real parties in interest, Dr. Marquez and the Marquez Trust, and from the real party in interest, Morales, and have also received replies to these responses from relators.

---

[3] The real parties contend that mandamus relief is barred by laches and relators' dilatory actions in failing to diligently pursue relief based on the forum selection clause. The underlying lawsuit was filed in 2009, the relators' answers had been filed by February 2010, the motions to dismiss were filed in January 2011, the hearing on the motions to dismiss was held in April 2011, relators requested a status conference and one was held in June 2012, the trial court denied the motions to dismiss on May 21, 2013, and these original proceedings ensued beginning on February 26, 2014 and ending on March 18, 2014. In response, relators contend, inter alia, that they did not receive notice of the trial court's order denying their motions to dismiss until January 16, 2014. It seems evident that a three-year delay in obtaining a ruling on a dispositive motion, without accompanying evidence pertaining to a diligent and systematic effort to obtain a ruling, is problematic at best. However, given our conclusion that mandamus relief is not warranted in this case on other grounds, we need not further discuss this issue. *See* TEX. R. APP. P. 47.1, 47.4.

5

## II. STANDARD OF REVIEW

Mandamus is appropriate when the relator demonstrates that the trial court clearly abused its discretion and the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).

A trial court clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by the analysis of principles rather than the application of simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). We evaluate the benefits and detriments of mandamus review and consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

The Texas Supreme Court has repeatedly held that mandamus relief is available to enforce a forum selection clause in a contract. *See, e.g., In re Fisher*, No. 12-0163, 2014 WL 801160, at *5 (Tex. Feb. 28, 2014) (orig. proceeding); *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (orig. proceeding); *In re Laibe Corp.*, 307 S.W.3d

314, 316 (Tex. 2010) (orig. proceeding) (per curiam); *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding); *In re Int'l Profit Assocs.*, 286 S.W.3d 921, 922 (Tex. 2009) (orig. proceeding) (per curiam); *In re Int'l Profit Assocs.,* 274 S.W.3d 672, 674 (Tex. 2009) (orig. proceeding) (per curiam); *In re AutoNation, Inc.*, 228 S.W.3d 663, 665 (Tex. 2007) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d 109, 115–19 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when it fails to properly interpret or apply a forum selection clause. *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 883; *In re Laibe Corp.*, 307 S.W.3d at 316. Further, an appellate remedy is inadequate when a trial court improperly refuses to enforce a forum selection clause because allowing the trial to go forward will "vitiate and render illusory the subject matter of an appeal," that is, trial in the proper forum. *In re AIU Ins. Co.*, 148 S.W.3d at 115 (quoting *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d at 269, 272 (Tex. 1992)); *accord In re Laibe Corp.*, 307 S.W.3d at 316. Allowing a lawsuit to proceed in a forum other than that for which the parties contracted "promotes forum shopping with its attendant judicial inefficiency, waste of judicial resources, delays of adjudication of the merits, and skewing of settlement dynamics." *In re Fisher*, 2014 WL 801160, at *5; *see In re Lisa Laser USA, Inc.*, 310 S.W.3d at 883.

### III. FORUM SELECTION CLAUSES

Forum-selection clauses are contractual arrangements whereby parties agree in advance to submit their disputes for resolution within a particular jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.); *Phoenix Network Techs. (Eur.) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The enforcement of valid forum-selection clauses, bargained for by the parties, protects the parties' "legitimate expectations" and furthers "the vital interests of the justice system," such as sparing litigants the time and expense of pretrial motions to determine the proper forum for disputes. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594 (1991); *RSR Corp.*, 309 S.W.3d at 700; *Phoenix Network Techs.*, 177 S.W.3d at 611. The Texas Supreme Court has adopted the federal analysis of forum selection clauses to determine their enforceability. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005); *In re Automated Collection Technologies, Inc.*, 156 S.W.3d 557, 558–59 (Tex. 2004) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d at 111–14; *Diamond Offshore (Bermuda), Ltd. v. Haaksman*, 355 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also In re Dingo Drilling, Inc.*, No. 14-13-00015-CV, 2013 WL 645206, at *2 (Tex. App.—Houston [14th Dist.] Feb. 21, 2013, orig. proceeding) (per curiam mem. op.).

Forum selection clauses are presumptively valid. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re Int'l Profit Assocs.*, 274 S.W.3d at 680; *Stokes Interest, G.P. v. Santo-Pietro*, 343 S.W.3d 441, 444 (Tex. App.—El Paso 2010, no pet.). While there may be "extreme circumstances" that prevent the enforcement of forum selection clauses, there is not "a bright-line test for avoiding enforcement of forum selection clauses." *In re ADM Investor Servs.*, 304 S.W.3d at 376 (following *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). A trial court abuses its discretion in refusing to enforce a forum selection clause unless the party opposing enforcement clearly shows: (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3)

8

enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375; *see also In re Brown*, No. 05-13-01354-CV, 2013 WL 6115855, at *1 (Tex. App.—Dallas Nov. 21, 2013, orig. proceeding). The burden of proof is heavy for the party challenging enforcement. *In re Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d at 375; *see also In re Brown*, 2013 WL 6115855, at *1.

A motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause. *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 261 (Tex. App.—Austin 2010, pet. dism'd); *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 626 (Tex. App.—Texarkana 2008, pet. denied). While we review the trial court's ruling on a motion to dismiss for abuse of discretion; see *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 231–32 (Tex. 2008) (orig. proceeding) (per curiam), to the extent that our review involves the construction or interpretation of an unambiguous contract, the standard of review is de novo. *Phoenix Network Techs.*, 177 S.W.3d at 610; *see also W. Tex. Hospitality, Inc. v. Enercon Int'l, Inc.*, No. 07-09-0213-CV, 2010 WL 3417845, at *4 (Tex. App.—Amarillo Aug. 31, 2010, no pet.) (mem. op.).

### IV. Permissive or Mandatory Nature of Forum Selection Clause

Relators contend that the trial court erred in denying their motions to dismiss because the forum selection clause in the Agreement is valid and binding and encompasses the claims against them raised in this lawsuit. In response, the real parties contend, inter alia, that the forum selection clause is not mandatory or exclusive, and thus the trial court did not err in denying their motions to dismiss. Relators contend that the

9

real parties waived this issue by failing to raise it in the trial court. The real parties did not raise this issue in their written responses to the motions to dismiss; however our review of the reporter's record on the hearing to dismiss indicates that the real parties argued that the forum selection clause was not mandatory at the hearing on the motions to dismiss. Counsel for the real parties expressly argued that the clause at issue is a "proper venue" clause and "not an exclusive forum selection clause." Counsel specifically asserted that "[i]f the parties want to contract for exclusive venue or [an] exclusive place of jurisdiction, they could have so stated and they did not." Relators did not include the reporter's record from this hearing in their petitions on grounds that "no testimony was adduced in connection with the matter complained." *See* TEX. R. APP. P. 52.7(a)(2). While relators were not required to include a transcript of the hearing with their mandamus records because the hearing was not evidentiary, they were nevertheless required to fairly represent the record and include all relevant and material information.

Accordingly, before determining whether the forum selection clause is mandatory and enforceable, we first address whether the forum selection clause is mandatory or merely permissive. *See, e.g., Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324–25 (Tex. App.—Austin 1999, pet. denied).

A forum selection clause can be mandatory and exclusive, or permissive in nature. *See In re Fisher*, 2014 WL 801160, at *8; *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994). A mandatory forum selection clause requires that all litigation be conducted in a specified forum. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009); *LeBlanc v. C.R. England, Inc.*, 961 F.Supp.2d 819, 828 (N.D. Tex. 2013). For a forum selection clause to be considered mandatory or exclusive,

the clause "must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956–57 (5th Cir.1974) (per curiam); *UNC Lear Servs., Inc.,* 581 F.3d at 219*; LeBlanc*, 961 F.Supp.2d at 828; *Valero Mktg. & Supply Co. v. Gen. Energy Corp.*, 702 F.Supp.2d 706, 712 (S.D. Tex. 2010); *see also TruGreen Landcare, L.L.C. v. Telfair Cmty. Ass'n, Inc.*, CIV.A. No. H-12-514, 2013 WL 2147471, at *2 (S.D. Tex. May 14, 2013). Where the agreement contains clear language showing that jurisdiction is appropriate only in a designated forum, the clause is mandatory. *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 560 (N.D. Tex. 1997). Stated otherwise, "[a]n enforceable forum selection clause must contain explicit language regarding exclusivity." *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

In contrast, a permissive forum selection clause, often described as a "consent to jurisdiction" clause, authorizes venue in a designated forum but does not prohibit litigation elsewhere. *LeBlanc*, 961 F.Supp.2d at 828; *Von Graffenreid*, 246 F.Supp.2d at 561. Consenting to the jurisdiction of one forum does not necessarily mean that a party has selected an exclusive forum and waived its right to have the case heard in different forums. *City of New Orleans*, 376 F.3d at 504. Thus, a forum selection clause providing that a particular court "shall" have jurisdiction over a controversy may be permissive, even though use of the term "shall" is typically mandatory, because it does not foreclose the possibility that other courts may also have jurisdiction. *See Caldas & Sons, Inc.*, 17 F.3d at 127–28; *Keaty*, 503 F.2d at 956–57; *see also TruGreen Landcare, L.L.C.*, 2013 WL

11

2147471, at *2.

When the terms of a forum selection clause are neither clearly mandatory nor permissive, but instead ambiguous in nature, the court applies principles of contract law to discern the parties' intent, if possible. *Caldas & Sons, Inc.*, 17 F.3d at 127; *Keaty*, 503 F.2d at 957; *LeBlanc*, 961 F.Supp.2d at 828; *RSR Corp.*, 309 S.W.3d at 700; *Phoenix Network Techs.*, 177 S.W.3d at 615; *Sw. Intelecom, Inc.*, 997 S.W.2d at 324–25. Under settled contract principles, when a forum selection clause is ambiguous, it should be construed against the drafting party. *Caldas & Sons*, 17 F.3d at 127; *see Tenneco, Inc. v. Greater Lafourche Port Comm'n*, 427 F.2d 1061, 1065 (5th Cir. 1970); *LeBlanc*, 961 F.Supp.2d at 828.[4]

In applying the foregoing principles, courts have determined that various forum selection clauses which specify a particular jurisdiction, but do not exclude others, do not create a mandatory and enforceable forum selection clauses. *See, e.g., Mabon Ltd.*, 29 S.W.3d at 297 (holding that a forum selection provision was permissive where it provided that "the laws of the Federal Government of Nigeria will apply and the Federal District of Nigeria shall have venue"); *Sw. Intelecom, Inc.*, 997 S.W.2d at 323 (holding that a forum selection provision was permissive where it provided that "[t]his Agreement shall be governed by the laws of the State of Minnesota. The Parties stipulate to jurisdiction and venue in Ramsey County, Minnesota, as if this Agreement were executed in Minnesota."); *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 443 (W.D. Tex. 2007)

---

[4] *See City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504–06 (5th Cir. 2004) (holding that a forum-selection clause in which a party to the contract "consent[ed] and yield[ed] to the jurisdiction of the State Civil Courts of the Parish of Orleans" was not mandatory because it was "susceptible to more than one reasonable interpretation"); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956–57 (5th Cir. 1974) (holding that a negotiated forum-selection clause stating that "the parties submit to the jurisdiction of the courts of New York" was not mandatory because it was "subject to opposing, yet reasonable, interpretations" and did not "clearly limit[ ] actions thereunder to the courts of a specified locale").

12

(holding that forum selection clause was permissive where it stated that "[t]his contract shall be construed and performed in accordance with [the] laws of the State of Florida and jurisdiction and venue for any litigation arising out of it may be laid in Hillsborough County, Florida."); *see also In re Dingo Drilling, Inc.*, 2013 WL 645206, at *2 (concluding that a forum selection clause was permissive where it provided "[i]n the event of a failure to settle the disputes [in] by negotiation, all disputes and arguments shall be transferred for settlement to the court authorities of the Republic of Kazakhstan"); *Apollo Prop. Partners, LLC v. Diamond Houston I, L.P.*, No. 14-07-00528-CV, 2008 WL 3017549, at *3 n.4 (Tex. App.—Houston [14th Dist.] Aug. 5, 2008, no pet.) (mem. op.) (stating that a forum selection clause was permissive where it provided that "[t]he parties irrevocably submit to the jurisdiction of any Illinois court, or federal court sitting in Cook County, Illinois, to enforce ruling [sic] arising out of or relating to this Agreement; and the parties consent to Cook County, Illinois and irrevocably waive to the fullest extent permitted by law, any objection to such venue as being an inconvenient forum"); *TruGreen Landcare, L.L.C.*, 2013 WL 2147471, at *3 (holding that a forum selection clause was permissive where it provided that the "parties stipulate and agree that venue for any action brought hereunder shall [properly] lie in the state and federal courts situated in Fort Bend County, Texas"); *Safety-Kleen Sys., Inc. v. McCoy Freightliner, Inc.*, No. 4:10-CV-608, 2011 WL 2009958, at *4 (E.D. Tex. Apr. 11, 2011), *report and recommendation adopted*, 2011 WL 1986201 (E.D. Tex. May 23, 2011) (holding that a forum selection was permissive where it stated "[t]his Agreement shall be interpreted and enforced according to the Laws of the State of Texas and the parties agree to submit to the jurisdiction of the courts of the State of Texas for any disputes arising under this Agreement."); *Moody v. Aqua Leisure Int'l,*

13

CIV.A. No. H-10-1961, 2010 WL 4955397, at \*\*2–3 (S.D. Tex. Nov. 30, 2010) (holding that a forum selection clause was permissive where it stated that "jurisdiction and venue shall lie with the state and federal courts located in Comal and/or Travis County, Texas.").

In contrast, courts have determined that forum selection clauses that evidence a clear intent to make that jurisdiction exclusive to be mandatory in application. *See, e.g., In re Fisher*, 2014 WL 801160, at \*1 (holding that a forum selection clause was mandatory where it provided that "each of the parties irrevocably submits to the non-exclusive jurisdiction of each such court in any such proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding may be heard and determined in any such court and agrees not to bring any proceeding arising out of or relating to this Agreement in any other court."); *Ramsay*, 254 S.W.3d at 626 (holding that a forum selection clause was mandatory where it provided that "[a]ll actions or proceedings arising . . . from this agreement or any transaction covered hereby, shall be governed by the law of Illinois and may, at the discretion and election of [ADM], be litigated in a court whose situs is within Illinois"); *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 683–84 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (determining forum selection clause was mandatory where it stated that the agreement "shall be governed exclusively by and interpreted in accordance with the law of The Netherlands, and the parties irrevocably agree that the courts of The Hague, The Netherlands shall have exclusive jurisdiction to resolve any controversy or claim of whatever nature arising out of or relating to the [agreement] or breach thereof"); *Phoenix Network Tech.*, 177 S.W.3d at 610 (holding that a forum selection clause was mandatory where it provided that "[t]he parties hereby agree

14

that this Agreement and the provisions hereof shall be construed in accordance with English law and the venue for resolution of any disputes arising out of this Agreement shall be the United Kingdom"); *Valero Mktg. & Supply Co.*, 702 F.Supp.2d at 712 (holding that a forum selection clause was mandatory where it stated that the parties "agree that the sole jurisdiction for any claims shall be in state or federal courts located in Harris County[,] Texas").

In the instant case, the paragraph at issue in the Agreement includes both a choice of law provision and a forum selection provision. The choice of law provision is both specific and exclusive: "This Agreement, and the application or interpretation thereof, shall be governed exclusively by its terms and by the laws of the State of Colorado." The use of "shall" typically, although not always, indicates a mandatory requirement, *see Caldas & Sons, Inc.*, 17 F.3d at 127–28; *Keaty*, 503 F.2d at 956–57; and the clause expressly excludes the application of other law through the term "exclusively."

The forum selection clause, in contrast, provides broadly that "the State of Colorado is the proper jurisdiction and that Denver is the proper venue to hear any such action." Relators contend that under authorities such as *Phoenix Network* and *Ramsey*, the forum selection clause is mandatory. *See Ramsay*, 254 S.W.3d at 626; *Phoenix Network Tech.*, 177 S.W.3d at 610. We conclude that these cases are distinguishable. In *Ramsey*, the forum selection clause provided that "[a]ll actions or proceedings arising . . . from this agreement or any transaction covered hereby, shall be governed by the law of Illinois and may, at the discretion and election of [ADM], be litigated in a court whose situs is within Illinois." *See Ramsay*, 254 S.W.3d at 626. This clause gave one party the unilateral right to dictate the venue, and the forum selection clause in this case contains

15

no such unilateral option. In *Phoenix Network*, the forum selection clause provided that "the venue for resolution of any disputes . . . shall be the United Kingdom. *See Phoenix Network Tech.*, 177 S.W.3d at 610. The court concluded that the term "shall" generally indicates a mandatory requirement, and the use of the definitive article "the" rather than "a" indicated that the parties intended for the U.K. to be the exclusive venue. *See id.* at 615–16. In contrast, the forum selection here contains no mandatory language such as "shall," and, although the forum selection clause uses the definitive article "the," that usage alone does not express the clear intent that the forum is exclusive. *See, e.g., Keaty*, 503 F.2d at 956–57; *see also Apollo Prop. Partners, LLC*, 2008 WL 3017549, at *3 n.4; *TruGreen Landcare, L.L.C.*, 2013 WL 2147471, at *3; *Safety-Kleen Sys., Inc.*, 2011 WL 2009958, at *4. Although relators contend that usage of "the" as a definitive article indicates that the clause is exclusive, we do not construe contracts or decide cases based on the inclusion or exclusion of "magic words." *Falk & Fish, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 527 (Tex. App.—Dallas 2010, no pet.); *see Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). Instead, we read the forum selection clause in its entirety and strike to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *Phoenix Network Tech.*, 177 S.W.3d at 615. In doing so, we conclude that the forum selection clause is permissive rather than mandatory because it does not express a clear intent that the State of Colorado is the exclusive jurisdiction for this litigation. The forum selection clause contains no mandatory language like that utilized in the choice of law provision, and it does not expressly exclude the possibility that the parties could litigate in other jurisdictions. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699,

16

708 (Tex. App.—Dallas 2011, pet. denied) ("The use of different language in different parts of a contract generally means that the parties intended different things.").

## V. CONCLUSION

The forum selection clause in this case establishes that Colorado will have jurisdiction, but does not clearly demonstrate the parties' intent to make that jurisdiction exclusive. *See City of New Orleans, Inc.*, 376 F.3d at 504. Having concluded that the forum selection clause is permissive rather than exclusive, we need not consider whether or not it is otherwise enforceable by the relators herein. *See* TEX. R. APP. P. 47.1, 47.4. The Court, having examined and fully considered the petitions for writ of mandamus, the responses thereto, and the replies, is of the opinion that relators have not met their burden to show themselves entitled to the relief sought. Accordingly, the petitions for writ of mandamus are DENIED in each of these causes. *See* TEX. R. APP. P. 52.8(a).

*/s/ Rogelio Valdez*
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of May, 2014.

17